**Robert Louis BURAGE, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 05–83–00032–CR.**

Court of Appeals of Texas,
Dallas.

March 24, 1983.

Melvyn Carson Bruder, Dallas, for appellant.

Henry Wade, Dist. Atty., W.T. Westmoreland, Asst. Dist. Atty., for appellee.

Before AKIN, WHITHAM and MALONEY, JJ.

AKIN, Justice.

Robert Louis Burage appeals from a conviction of murder, for which he was assessed a life sentence and a $10,000 fine. In three grounds of error, Burage contends that certain evidence admitted against him, including a confession by him, was the product of an illegal arrest. Appellant also argues that the voir dire panel from which his jury was selected should have been dismissed. In this respect, he asserts the minds of this panel were prejudiced by the prosecutor's reference to the fact that Appellant's wife could not testify against him. In his final ground, Appellant contends that he should have been granted a mistrial after the prosecutor argued facts not in the record. Finding the Appellant's grounds without merit, we affirm.

The Appellant's first contention is that police officers subjected him to an illegal arrest and search. To fully understand this contention, it is necessary to trace the facts leading to Appellant's arrest. The Appellant and his wife had been living with the victim. After finding the victim's body, two Dallas police investigators went to the victim's residence seeking his next of kin. The officers spoke to the landlord who referred them to Appellant and his wife. The officers knocked on the door of the residence and Appellant's wife answered. She stated that she knew of no next of kin but suggested that the officers speak to Appellant. Appellant's wife came outside. The officers continued to knock. Stating that Appellant was inside, Appellant's wife told the officers to go in the house. The officers opened the door and stepped into a long, dimly lighted hallway. The officers, who were in plainclothes, walked down the hall calling Appellant's name and "Police Officers." The officer who was in the lead stated that he heard his partner shout "come out of there." The officer turned and saw his partner pointing his pistol at the door of a bathroom which opened off the hall. Apparently, as the second officer passed, the door opened slightly, this action startled the officer, causing him to draw his weapon and shout. When the officer in the lead turned, he saw the door closing. There is a conflict in the officer's testimony as to whether he or Appellant re-opened the door, but Appellant claimed that he never heard the officers yell for him and only opened the door when he heard someone say "come out of there."

When Appellant opened the door, certain drug paraphernalia was in plain view of the officers, who then placed Appellant under arrest, searched his person, and found certain evidence which implicated Appellant in the victim's murder. Later, when confronted with this evidence, Appellant confessed.

Appellant now asserts that the opening of the bathroom door infringed upon his expectation of privacy without a reasonable cause on the part of the officers. According to this argument, since the opening of the door was a violation of his rights, the drugs were not properly in plain view and thus his arrest was illegal. Consequently, he argues that since the arrest was illegal, any evidence seized in a search incident to the arrest was tainted, and inadmissible, including the confession flowing from that illegal arrest. We cannot agree that his arrest was illegal. Consequently, all evi-

dence flowing from his legal arrest was admissible.

■ All of Appellant's arguments hinge on whether the opening of the bathroom door was permissible. Appellant concedes that the officers were properly in the hallway, having been given permission to enter by his wife, but contends that he was compelled to come out of the bathroom after having been ordered to do so by the officers. In his testimony, however, he fails to confirm that he was compelled to open the bathroom door. Instead, he stated that he heard someone say "come out of there," and he then opened the door. We fail to see at what point in this scenario Appellant made any assertion of privacy.

Even if the action on the part of Appellant can be construed as the assertion of a right to privacy and that the opening of the door was in submission to the authority and command of an officer, the actions of the officers were reasonable. The United States Supreme Court has stated, "The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security." Reasonableness, of course, depends on a balance between the public interest and the individual's right to personal security, free from arbitrary interference by law officers. *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977).

■ The facts here are analogous to the "stop and frisk" line of cases beginning with *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). These cases stand for the proposition that when an officer has a reasonable suspicion that criminal activity is occurring, a person may be stopped and the officer, to protect himself, may make a minimal intrusion on the person to insure that the individual does not present a danger to the officer. In this case, the officers were properly proceeding along a dimly lighted hall. As they walked down the hall, they had repeatedly called out to make their presence known. After they had passed a door opening onto the hall,

they heard the door surreptitiously open slightly. The officers had a right to know who was furtively observing their entrance. This situation is similar to police officers asking a person to step from a car stopped for a traffic violation, even though they had no suspicion of wrongdoing, which action was sanctioned in *Pennsylvania v. Mimms,* 434 U.S. at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 336. The primary rationale of that decision was protecting the safety of the officers. Additionally, the Supreme Court noted that the intrusion upon the individual's rights was minimal. *Id.* at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 337. The same rationale applies here. Even if the bathroom door was opened by the appellant in response to the officer's command, it was reasonable under these circumstances for the officers' protection. Furthermore, the intrusion was minimal upon Appellant's privacy. Thus, we hold that appellant's Fourth Amendment rights were not violated and that the evidence flowing from the opening of the bathroom door was untainted and admissible.

The Appellant next contends that his case was prejudiced by the comments of the prosecutor during the voir dire of the jury panel. The prosecutor stated: "The Code of Criminal Procedure provides that a wife cannot be called to testify against her husband. If at some time during the trial you were wondering why the wife of the defendant was not called by the State...." At this point appellant objected. After the objection, the trial judge informed the jury that it was to base its verdict only upon the evidence which it heard. The trial judge admonished the jury not to speculate as to what witnesses not called might say. He also explained that the law prohibited a wife from testifying against her husband. Appellant argues that this was a strategy on the part of the prosecution to place in each juror's mind that Appellant's wife would give testimony favorable to the State if permitted to testify. Furthermore, Appellant contends that the instruction from the trial judge compounded this error by again emphasizing to the jury panel that a wife could not be called to testify against her husband. We cannot agree.

Although Article 38.11 of the Code of Criminal Procedure prohibits a husband or wife from testifying against each other, the prosecution is not barred under all circumstances from making mention of this fact. "It is the rule in this State . . . if the wife of the accused be a witness to any fact material to his defense, and be available and not called by the defense, this is properly a subject of inclusion in the State's argument to the jury." *Weaver v. State,* 129 Tex.Cr.R. 317, 86 S.W.2d 758, 759 (Tex.Cr. App.1935). It has also been held permissible for the prosecutor to imply that the spouse was not called by a defendant because her testimony would not have been favorable to his case. *Fisher v. State,* 511 S.W.2d 506, 507 (Tex.Cr.App.1974). The prosecution has also been permitted to ask a defendant while on the stand if he knew that the State could not call his wife but he could. This is permissible when "material" which we assume to mean that the wife is in possession of facts material to the defense. *Purifoy v. State,* 163 Tex.Cr.R. 488, 293 S.W.2d 663, 664 (Tex.Cr.App.1956); *Stallings v. State,* 476 S.W.2d 679, 681 (Tex. Cr.App.1972).

On the other hand, it has also been held that to ask the defendant whether he knows that his wife cannot be called to rebut what he is saying and then to argue that the defendant has carte blanche to say what he wishes since his wife could not be called is error. *Ross v. State,* 629 S.W.2d 106, 108 (Tex.App.—Dallas 1981, no pet.). In *Ross* the court held that by this tactic the prosecution was doing by indirection what it could not do directly and concluded that the jury would obviously deduce that the wife would have testified against her spouse. *Id.* Likewise, it is reversible error to call a spouse to the stand and force the defendant to object in front of the jury to prevent the testimony "when such action is done in such a manner as to convey to the jury the impression that the wife, if allowed to testify, would rebut defense testimony previously given in the case." *Johnigan v. State,* 482 S.W.2d 209, 211 (Tex.Cr.App.1972).

Obviously the holdings with respect to this point of error are not entirely consistent, since in certain cases the prosecutor may mention the spouse's failure to testify and in other cases mentioning the spouse's inability to testify constitutes reversible error. Apparently it is a matter of degree. If the prosecution places the spouse on the stand, forcing the defendant to object, or indicates that the spouse could rebut the defendant's testimony, the prosecutor has indirectly turned the nontestifying spouse into a State's witness, a result that Article 38.11 intended to avoid.

In the present case, the statement of the prosecutor during voir dire that a wife cannot testify against her husband did not indirectly turn Appellant's wife into a State's witness. Moreover, the comment occurred even before the jury was chosen and the trial judge quickly admonished the jury panel not to infer what a witness, not called, might testify. Although the judge's comment on the inability of the wife to testify may have somewhat reemphasized the prosecutor's comment, no error occurred considering the early stage of the proceeding and the strength of the evidence, against Appellant, including a confession. We conclude, therefore, that the Appellant was not deprived of a fair trial as a result of the prosecutor's voir dire comment.

Appellant's final contention is that he was prejudiced by the argument of the prosecutor during the guilt-innocence phase of his trial. Appellant claims that in order to bolster the believability of Appellant's confession, the prosecutor told the jury that Appellant had been arraigned before confessing. Although his motion for mistrial was overruled, Appellant's objection to the argument was sustained and the jury instructed to disregard the statement. The prosecutor immediately brought the matter up again. Likewise, another objection was sustained, the jury instructed to disregard it, and another motion for mistrial overruled. We conclude that no error is shown because the trial judge instructed the jury to disregard the prosecutor's statement and because the voluntariness of the confession

was determined by the Court, rather than the jury.

Affirmed.