**Benjamin Coronado VERACRUZ, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–85–0435–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

July 3, 1986.

Kristine C. Woldy, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., and Roe Morris, Harris Co. Asst. Dist. Atty., Houston, for appellee.

Before EVANS, C.J., and WARREN and JACK SMITH, JJ.

## OPINION

JACK SMITH, Justice.

A jury found appellant guilty of murder and assessed his punishment at 20 years confinement. On appeal, he alleges (1) that the State repeatedly violated the Texas Code of Criminal Procedure which provides that a wife cannot testify against her husband; (2) that the evidence is insufficient to disprove the appellant's defense that he was responding to the immediate influence of sudden passion arising from an adequate cause; (3) that the trial court erred in denying appellant's requested charge to the jury on the lesser included offense of involuntary manslaughter; and (4) that the trial court erred in refusing to submit his properly requested charge on criminally negligent homicide.

The evidence shows that shortly after midnight on the morning of August 20, 1983, appellant killed Herminio Moncivais (known as "Mingo") by shooting him twice with a shotgun.

It appears to be undisputed that prior to the date of the offense, appellant had been separated from his wife off and on for about three years. During this time, he continued to support his family financially by making house payments and generally taking care of his family. Also during this time, when he was not living at home, he stayed part of the time with his brother Edward and part of the time with friends, including girlfriends. It also appears to be undisputed that appellant's wife during the time of their separation had dates with other men, including Mingo, the deceased.

On the night the killing occurred, appellant had been looking for his wife and daughters around 9:00 that evening. When he did not locate them, he left, but returned around midnight and parked behind Mingo's car, which was parked in front of the appellant's home. Mingo was in the car with appellant's wife, Gloria, two of the appellant's five daughters, Mary (age 16) and Linda (age 6), and Ricky Flores, Mary's boyfriend. Appellant got out of his car, approached Mingo's car, and asked Mingo to leave. At that time, at the request of Mingo and appellant, all the people in Mingo's car got out and, with the exception of Mingo, all of them went toward the house or in the house. Mingo stood by his car. Appellant returned to his car, got his shotgun, and shot toward Mingo at a distance of 15 feet or less. He shot a second time, stood over the body a few seconds, and then got back into his car and left.

In his first ground of error, appellant contends that the trial court erred in permitting the State to repeatedly violate that section of the Texas Code of Criminal Procedure which prohibits spouses from testifying against each other in a criminal prosecution. *See* Tex.Code Crim.Proc.Ann. art. 38.11 (Vernon Supp.1986).

█ He first complains that, on voir dire, the prosecutor informed the panel that the State was prevented by law from calling the spouse of the defendant, and explained that he did not want the jury to hold this failure against the State. The prosecutor also explained that the defendant could call his wife, but was not obligated to do so,

and that if the defendant did call his wife, the prosecution could cross-examine her.

The remarks by the prosecutor were an explanation of article 38.11, of the Texas Code of Criminal Procedure. An explanation of article 38.11 during voir dire is not error. *Burage v. State*, 648 S.W.2d 786 (Tex.App.—Dallas 1983, no pet.).

■ Appellant also claims that the State repeatedly subpoenaed Gloria Veracruz, including the date the trial actually began, and placed her under an appearance bond as a material witness. He complains that the State knew it could not call his wife as a witness. Appellant's statements appear to be true, but this action, without more, could have had no prejudicial effect on the jury and does not constitute error. *See Stewart v. State*, 587 S.W.2d 148, 153 (Tex. Crim.App.1979).

■ He also complains that the State cross-examined him by asking him, "Now, is your wife going to testify here today?" He replied, "I don't know." We do not find this question and answer to be a violation of article 38.11. The State is entitled to show that the defendant knew he could call his wife as a witness, if he so desired. The State is also entitled to show that it could not call the wife as a witness and to cross-examine the defendant on the point, when the evidence shows that the wife could have given material evidence. *Stallings v. State*, 476 S.W.2d 679, 681–682 (Tex.Crim. App.1972).

■ Appellant also complains of three instances of jury argument made by the State which he alleges were violative of article 38.11. The first prosecutorial argument about which he complains was that it did not make sense to believe that appellant was living with his wife, had been with her all day, and that his wife had enough guts to take off with her boyfriend while the appellant went out for bread.

The second argument about which he complains was that the wife must not have been thinking about reconciliation because she took off with her boyfriend that night.

■ We find no error in the court permitting the State to make these arguments. The State is entitled to question the appellant's version of the facts, and to draw logical inferences from the evidence adduced. *See Darden v. State*, 629 S.W.2d 46, 52 (Tex.Crim.App.1982). In the instant case, appellant had testified that he was living with his wife and had been with her all day, and that when he went to buy a loaf of bread, his wife had gone off with her boyfriend and her two daughters. The prosecutor obviously drew a logical inference that the appellant's version of the facts was illogical.

Appellant also complains about the prosecutor not only making a statement about appellant's wife not testifying but also commenting on the fact that she was in the courtroom.

The record shows that the State subpoenaed appellant's wife and placed her under an appearance bond, but that she was never called to testify. During final argument, the prosecutor made the following statements appellant now asserts require a reversal:

Prosecutor:

Who else? Gloria Veracruz. I think she's in the courtroom right back there. Did she come to the stand and tell you what she knew about what happened on August 20, 1983? No. Never got there, did she? I think you ought to wonder about that. I think you ought to wonder what their testimony might have been. But look at the whole area as to the different witnesses that he knew that he was going to have to combat in this trial. His wife, he knew good and well I couldn't call his wife. You knew that from the beginning in this thing. You knew by law I cannot call his wife to the stand. You knew one six-year-old girl, there was no way that—who knows what she knows? And she's so young that probably she couldn't handle that. Who was the one person in his family that he needed some way to stay away from this trial? It was his sixteen-year-old daughter. And she's not here. She's not here.

Shortly after that, the prosecutor argued:

He said he brought the closest members of his family. The closest member of his family didn't testify.

It is well established that a prosecutor may not give his version of a missing witness' testimony, but where that witness is the defendant's spouse, the State may imply that the absent testimony would have been material and damaging. *Fisher v. State*, 511 S.W.2d 506, 507 (Tex.Crim.App. 1974). However, it has been held to be error where the State asked the defendant whether he knew that the State could not call his wife to rebut his testimony, and then the State argued that the defendant had carte blanche to say what he wished since his wife could not be called. *Ross v. State*, 629 S.W.2d 106, 108 (Tex.App.—Dallas 1981, no pet.). In *Burage v. State*, 648 S.W.2d 786, 789 (Tex.App.—Dallas 1983, no pet.), a summation of the present status of the caselaw on this issue was made, as follows:

[T]he holdings with respect to this point of error are not entirely consistent, since in certain cases the prosecutor may mention the spouse's failure to testify and in other cases mentioning the spouse's inability to testify constitutes reversible error. Apparently it is a matter of degree.

■ In the instant case, appellant contends that the prosecutor's remarks imply that appellant's wife's testimony would have been harmful to appellant. If the wife's testimony could have possibly contained material facts, this could require reversal. However, when the evidence is analyzed, there is no showing that appellant's wife was present at the scene or that she actually witnessed the shooting. The only testimony that she could have given would have been facts about her past relationship with appellant, whether appellant was living with her at the time of the incident, and what was said by appellant and the deceased just prior to the shooting. There was no issue as to what was said prior to the shooting, because the appellant's version and Ricky Flores's version did not conflict. Thus, her only relevant testimony could have been as to their past relationship and to where appellant was living at the time of the incident. Her testimony could have no bearing on the issue of "sudden passion" or the events that occurred during the shooting because she had left the scene. Under these circumstances, we hold that the prosecutor's remarks were harmless error, if error at all.

Appellant's ground of error number one is overruled.

In his ground of error number two, appellant contends that the evidence is insufficient to disprove his defense that he was responding to the immediate influence of sudden passion arising from an adequate cause.

The basis of appellant's contention is that there was testimony in the record showing that: (1) he had several run-ins with the victim; (2) he had asked the victim to leave on other occasions; (3) he was surprised, angry, and upset to find him parked in front of appellant's house with appellant's wife and family on the night the shooting occurred; (4) appellant asked him to leave twice that night; (5) the victim was coming toward appellant and appellant thought the victim had something in his hand; and (6) the victim had lost his glasses and could not see without them.

Sudden passion is defined in the Texas Penal Code as:

"Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

Tex.Penal Code Ann. sec. 19.04 (Vernon 1974).

■ If the evidence raises the issue of sudden passion, the State must establish beyond a reasonable doubt the absence of such passion. On the other hand, if the evidence does not raise the issue, the State is not required to prove anything regarding

sudden passion in order to support a conviction for murder. *Bradley v. State*, 688 S.W.2d 847, 851 (Tex.Crim.App.1985).

■ The fallacy of appellant's contention, that the evidence raises the issue of sudden passion, is that it is refuted by his own testimony. On cross-examination, he testified that he shot the victim in self-defense, and would not have shot at him if the only reason was because he was angry and upset. This testimony refutes evidence which otherwise might have raised an issue of sudden passion. Furthermore, evidence raising an issue of self-defense does not automatically raise an issue of sudden passion. *Bradley*, 688 S.W.2d at 852.

Appellant's second ground of error is overruled.

In his third ground of error, appellant asserts that the trial court erred in denying his requested charge to the jury on the lesser included offense of involuntary manslaughter. He argues that although the court gave a charge on voluntary manslaughter, it also should have included in the charge an issue on involuntary manslaughter, because the evidence raised such an issue.

A person commits involuntary manslaughter if he "recklessly causes the death of an individual." Tex.Penal Code sec. 19.05(a)(1) (Vernon 1984).

■ A charge on a lesser included offense is not required merely because the proof of a lesser offense is included within the proof of the offense charged. A charge on the lesser included offense is "required only if there is evidence which shows that if the appellant is guilty, he is guilty only of the lesser offense." *Broussard v. State*, 642 S.W.2d 171, 173–74 (Tex. Crim.App.1982).

■ Contrary to appellant's contentions, the evidence does not show that if appellant is guilty, he is guilty only of the lesser offense. Appellant, in addition to testifying that he had shot the deceased in self-defense, testified, "the second time I just shot him to stop him." Then, when

asked, "you definitely intended to hit him, did you not," appellant replied, "well, to stop him, I guess it means yes." This line of testimony is consistent with, and corroborates, appellant's claim of self-defense. However, this testimony is inconsistent with his assertion that he recklessly caused the death of an individual.

Appellant's third ground of error is overruled.

In his final ground of error, appellant contends that the trial court erred in denying his requested charge to the jury on the lesser included offense of criminally negligent homicide.

A person commits criminal negligent homicide "if he causes the death of an individual by criminal negligence." Tex. Penal Code Ann. sec. 19.07(a) (Vernon 1974). The Texas Penal Code defines criminal negligence as follows:

(d) A person acts with criminal negligence or is criminally negligent, with respect to circumstances surrounding his conduct or as a result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex.Penal Code Ann. sec. 6.03(d) (Vernon 1974).

■ The evidence in the instant case does not raise the issue of criminal negligence. Appellant appears to contend that his intentional act of firing the gun resulted in his unintentionally shooting and killing the deceased.

■ The distinction between intentional and unintentional acts which arose under former penal codes has been abolished. *See Dockery v. State*, 542 S.W.2d 644 (Tex. Crim.App.1975) (op. on reh'g). Therefore, the distinction to be drawn in determining if the homicide is criminal is not whether

the act is intentional or unintentional, but whether the act is voluntary or involuntary. *Simpkins v. State*, 590 S.W.2d 129, 133 (Tex.Crim.App.1979).

The actions by appellant in the instant case toward the deceased were all voluntary. He stated that he was acting in self-defense, that he shot to stop him [the deceased], and that he intended to hit him. Under such circumstances, the issue of criminal negligent homicide was not raised. Appellant's fourth ground of error is overruled.

The judgment of the trial court is affirmed.