[Criminal No. 332.   Filed December 9, 1913.]

[136 Pac. 864.]

## CELSO LOSANO, Appellant, v. STATE, Respondent.

1. HOMICIDE—TRIAL—JURY QUESTION.—In a prosecution for homicide, evidence *held* sufficient to take the case to the jury.

2. HOMICIDE—APPEAL—REVIEW.—In a prosecution for homicide, where a conviction was had on sharply conflicting evidence, the verdict will not be disturbed on appeal, especially where the trial court refused a new trial.

3. HOMICIDE—MURDER IN THE FIRST DEGREE—ESSENTIALS.—Where accused was present, participating in an unprovoked and unnecessary killing of two officers of the law, premeditated design and criminal intent, from which malice might be inferred by the jury, were present.

[As to condition of mind of slayer which will reduce murder to manslaughter, see note in 134 Am. St. Rep. 726.]

APPEAL from a judgment of the Superior Court of the County of Greenlee. F. B. Laine, Judge. Affirmed.

The facts are stated in the opinion.

Mr. E. E. Wall, for Appellant.

Mr. G. P. Bullard, Attorney General, and Mr. Leslie C. Hardy, Assistant Attorney General, for Respondent.

ROSS, J.—This is an appeal from a judgment of conviction of murder in the first degree, with punishment fixed at life imprisonment, and from an order overruling a motion for a new trial. There are a number of complaints of the admission of evidence over the objection of appellant and the rejection of evidence offered by him. We have carefully examined these suggested errors and have concluded that no prejudicial error was committed.

The appellant in his brief makes this statement: "The grounds for this appeal are that the verdict of the jury was contrary to the law and the evidence, in that there was no evidence to prove any premeditated design, no fact upon which to base criminal intent, nor from which malice might be inferred, and no evidence to show that defendant was even armed, or that he was guilty of any overt act at the scene of the homicide, or that he in any manner directly or indirectly contributed to the death of the deceased." This is a direct challenge of the sufficiency of the evidence to sustain the verdict and judgment. Counsel for appellant has urged this ground with great earnestness and ability, both in brief and in his oral argument to the court.

The facts, succinctly stated, are: One Aviso, who was charged with a crime in Gila county, had gone to Eagle creek, Greenlee county. Jack Campbell, a deputy sheriff of Gila county, had gone to Greenlee county in search of Aviso. At Morenci he procured Alberto Manguia and H. D. Keppler, deputy sheriffs of Greenlee county, to go with him to Eagle creek to arrest Aviso. The appellant Losano lived on Eagle creek, and the officers had information that Aviso was stopping at his house. This information was obtained on September 23, 1912, and the officers left that night for Losano's

place on Eagle creek, and arrived on the creek about daylight September 24th. Before reaching Eagle creek, the officers caused one Romulo Sanchez (a brother of appellant) to join them. The four of them were proceeding down Eagle creek, and when within about one mile of Losano's home, some 300 yards ahead of them, they saw coming on the same trail in their direction some parties. Nearing the point where the advancing parties were seen, as witness Keppler says: "I saw one man coming along the trail in the brush." This man was known by Keppler, who engaged him in conversation; Manguia and Campbell proceeding the while down the trail. When Keppler looked in the direction Manguia, Campbell, and Sanchez were going, he observed the former on the ground pointing his rifle toward some brush on the west side of the creek, and Sanchez was holding his horse. Campbell had remained on his horse and was shooting in the same general course as Manguia. Keppler's horse became frightened and ran away with him, passing, as he says, within 15 or 20 steps from where Campbell and Manguia "were lying both dead." Keppler testified: "The only way I got out was by taking chances of these parties hitting me, and I started out and got close to where Albert [Manguia] and Jack [Campbell] was, and as I got below I saw some fellow stick his head up from behind the rock, which was probably 15 or 20 feet higher than where these boys were laying, and I noticed Celso Losano. I didn't get to see him long, as I was going pretty fast, and didn't have to go over 15 or 20 steps until he was out of my sight. He was the one up on the hillside behind a rock." This witness says that some 20 or 30 shots were fired at him all told, and six or seven after he had passed the dead men. He described the shots as sounding "like a bunch of fire-crackers you would set off." There was evidence that Aviso had been stopping with Losano and that Losano possessed a 30–30 rifle. Sanchez, who was holding Manguia's horse, testified that Aviso killed both Campbell and Manguia and then took from him the latter's horse and rode away; and that Losano was not present at the shooting. A number of 30–30 cartridge shells were found at the point and behind the rock where Keppler said he saw Losano. The wounds inflicted on the dead were by a 30–30. Appellant denied being present at the shooting and claimed that he was looking for his burroes at the

time.    Evidence of other witnesses tended to establish an *alibi*. Keppler, who recognized appellant as one of the parties shooting at the officers, testified that he had known appellant 15 or 20 years.

Appellant suggests that Keppler, in his wild and hurried effort to escape the fate of his fellow-officers, at best could have had only a momentary glance at the person whom he recognized as appellant, and that his identification was very improbable and not worthy of belief.    That, however, was a question for the jury.    The reasonableness, the weight, and effect of statements of witnesses are peculiarly within the province of the jury, and they having resolved the matter against the appellant, and their decision, having the approval of the trial court in his refusal to grant a new trial, ought not to be disturbed by us, but ratified in all cases of a conflict of evidence.    The jury may have made a mistake, but they are more apt to be right in their deductions and conclusions than an appellate court.    They see and hear the witnesses and have the advantage of observing their conduct and demeanor—psychological aids of inestimable worth never found in the cold records submitted to an appellate tribunal.    The verdict of a jury upon conflicting evidence ordinarily will not be set aside by an appellate court, the presumption being in favor of the verdict, and this seems to be the general rule in the courts of this country.    12 Cyc. 908, note 69.

The jury must have believed witness Keppler and must have been satisfied that appellant was present participating in the unprovoked and unnecessary killing of the two officers, and, that being true, "premeditated design," "criminal intent," "from which malice might be inferred," were manifest from appellant's very actions and conduct.

Judgment affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.