**Roman Navarro ROSS, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–83–157–CR.**

Court of Appeals of Texas,
Fort Worth.

Sept. 22, 1983.

Rehearing Denied Oct. 20, 1983.

John R. Leigh, Dallas, for appellant.

Molly Meredith, Asst. Dist. Atty., Dallas, for appellee.

Before HUGHES, SPURLOCK and BURDOCK, JJ.

## OPINION

HUGHES, Justice.

Roman Navarro Ross has appealed his conviction for voluntary manslaughter. Ross was charged with the murder of Frank Williams, Jr., and the jury found him guilty of the lesser included offense of voluntary manslaughter. The court assessed punishment at 20 years confinement in the Texas Department of Corrections.

We affirm.

The shooting incident which resulted in Ross' conviction occurred at approximately 4:00 a.m. on the morning of December 29, 1979, at the apartment of Willie Ann Ross. Ann Ross and Roman Ross were married in 1971 and had been separated since July of 1979. The couple had made plans to go out on December 28, 1979, but when Ross arrived at his wife's apartment around 11:00 p.m., she was not there. He went to a nearby bar and called his wife's apartment. A neighbor answered the phone. Ross then

went back to his wife's apartment and left her a note. He returned to the bar where he stayed for several hours.

At approximately 3:30 a.m. on December 29, Ross again phoned his wife's apartment and this time the phone was answered by a man, Frank Williams, Jr. When Ann Ross did not come to the phone, Ross went over to her apartment. He banged on the door and, when no one answered, entered the apartment through a window. Inside, Ross found his wife dressed in a white negligee he had bought her and Williams wearing a pair of pants. Ross then demanded his wife's wedding ring which he received and he went home.

Ross returned to his wife's apartment at approximately 4:00 a.m. with a .357 magnum. He heard voices inside and thought his wife and Williams were arguing. He broke open the door with his shoulder and entered the apartment. Williams lunged at Ross and shots were fired. Ross was shot in the forearm, Ann Ross was shot also and Williams was killed.

The first ground of error avers that the trial court erred in denying Ross the opportunity to impeach Nathaniel Tolliver with prior felony convictions. Tolliver, who is the father of Ann Ross, was an eye witness to the shooting.

In a hearing outside the presence of the jury it was revealed that Tolliver had been convicted of burglary on two previous occasions; once during the 1950's and once in 1967. On the 1967 charge he was released from prison in late 1971 or early 1972. The court would not allow the use of the convictions for impeachment because they were too remote to have any probative value.

■ A witness may be impeached with proof of a final conviction. Tex.Code Crim. Proc.Ann. art. 38.29 (Vernon 1979). However, the Texas Court of Criminal Appeals has placed limitations on this rule by holding that evidence of extremely remote convictions cannot be admitted for impeachment. *Miller v. State,* 549 S.W.2d 402 (Tex. Cr.App.1977). The question of remoteness of prior convictions is left largely to the

discretion of the trial judge. *Davis v. State,* 545 S.W.2d 147 (Tex.Cr.App.1976).

■ In the present case, the trial judge determined that Tolliver's two prior convictions were too remote to have any probative value on the credibility of the witness. We find nothing in the record to indicate he abused his discretion in making that determination.

■ Ross makes the argument that it would be grossly unfair to him to lose the opportunity to impeach a State's witness when that opportunity existed in the first trial which was later reversed. Ross was tried for the murder of Frank Williams, Jr., in 1980. At that time, Tolliver's 1967 conviction fell within the 10 year limitation and possibly could have been used for impeachment. We have no record of this first trial to determine if the conviction was used. The first trial resulted in a reversal and remand.

The Code of Criminal Procedure states that where a case is reversed by the Court of Criminal Appeals, the case is treated as if a new trial were granted. Tex.Code Crim.Proc.Ann. art. 44.29 (Vernon 1979). "The effect of a new trial is to place the cause in the same position as it was before any trial was had." Tex.Code Crim.Proc. Ann. art. 40.08 (Vernon 1979). The events in Ross' first trial are therefore irrelevant in the second trial. Ross' argument is without merit. The first ground of error is overruled.

■ In his second ground of error, Ross complains that the trial court erred in failing to hold a hearing as to the voluntariness of a statement given by Ross. The State only offered a certain portion of Ross' statement which read as follows: "The next thing I knew I was shooting. Frank came off the bar stool at me."

This portion of the statement was read to the jury and Ross was questioned about it for six pages of transcript. Then on direct examination, Ross testified about the circumstances surrounding the statement. During these twelve pages of testimony no objection was made to the voluntariness of

the statement. The only objection during trial was made some twelve pages later, after the statement had been read to the jury and a significant amount of testimony dealing with the statement was elicited. The objection was untimely and any question as to the voluntariness of the statement should have been brought to the court's attention when the testimony was first elicited. *Lyles v. State,* 171 Tex.Cr.R. 468, 351 S.W.2d 886 (1961). The ground of error is overruled.

Ross' final point of error avers that the trial court erred in failing to instruct the jury on the lesser included offense of criminally negligent homicide.

■ If a lesser included offense is raised by the evidence, then a charge on that issue must be given if it is properly requested. *Moore v. State,* 574 S.W.2d 122 (Tex.Cr. App.1978). To raise the issue evidence must show that if the defendant is guilty at all, he is guilty only of the lesser offense. *Royster v. State,* 622 S.W.2d 442 (Tex.Cr. App.1981).

■ In the present case, Ross requested an issue on the lesser included offense of criminally negligent homicide. Criminally negligent homicide is defined as causing the death of an individual by criminal negligence. Criminal negligence is defined in Tex.Penal Code Ann. sec. 6.03 (Vernon 1974) as follows:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Under the facts of the present case, Ross' contention of criminal negligence is without merit. The testimony revealed that Ross worked as a security guard and carried a .357 Magnum while performing those duties. He underwent firearms training over the 7 years he was a guard. He testified that the reason he carried the gun into the apartment was so Williams would leave him alone. He also stated that when he heard what he thought was his wife and Williams arguing he "lost control". Ross' statement that he never meant to kill anybody is irrelevant. Whether he acted intentionally or unintentionally is not the distinguishing factor in determining if the homicide was criminal. *See Simpkins v. State,* 590 S.W.2d 129 (Tex.Cr.App.1979). The evidence must show Ross committed a voluntary act with the requisite mental state. The evidence does not show that Ross possessed the requisite culpable mental state for negligent homicide. The ground of error is overruled.

Affirmed.

BURDOCK, J., dissents.

BURDOCK, Justice, dissenting.

I respectfully dissent to the court's finding in regard to appellant's first ground of error concerning the application of the rule of remoteness of a prior conviction used for impeachment purposes in cases where a defendant has been previously tried and is then awarded a new trial by an appellate court.

The majority opinion correctly states that the rule of remoteness of a prior criminal conviction for impeachment of a witness is governed by a ten year limitation. This rule has been firmly established by case law. *McClendon v. State,* 509 S.W.2d 851 (Tex.Cr.App.1974) and *Penix v. State,* 488 S.W.2d 86 (Tex.Cr.App.1972).

However, it is my opinion that the application of a rigid ten year limitation does not apply when the case tried is the result of the defendant being awarded a new trial pursuant to Tex.Code Crim.Proc.Ann. arts. 40.08, 44.29 (Vernon 1979).

In the instant case, appellant was first tried in 1980. At that time appellant could attack the credibility of the State's witness, Tolliver, because he had only been released

**850**

from the penitentiary on his last conviction 8 or 9 years prior to the date of the trial. Appellant appealed his 1980 conviction which resulted in a reversal by a higher court. His second trial for the same offense did not take place until 1982. By 1982, approximately 11 years had passed since Tolliver had been released from the penitentiary.

Since the second trial occurred after a ten year lapse from the witness Tolliver's release from prison, I believe the court abused its discretion in refusing to permit appellant's attorney to impeach the State's witness with the same conviction that could have been used in the 1980 trial.

Article 44.29 states:

Where the court of Criminal Appeals awards a new trial to the defendant, the cause shall stand as it would have stood in case the new trial had been granted by the court below.

Article 40.08 states in part:

The effect of a new trial is to *place the cause in the same position in which it was before any trial had taken place ....* (Emphasis supplied.)

Here the rigid application of the 10 year limitation rule of remoteness worked to deprive the appellant of a new trial under the terms prescribed by law.

Fundamental fairness would dictate that the appellant should not have to choose between his right of appeal under the law and the preservation of the impeachment evidence of an important State's witness.

I believe the trial court abused its discretion and for the reasons set forth above, I would reverse this case for yet another trial and permit the appellant to use the latest conviction for impeachment purposes.