Billy Wayne DOWDEN, Sr., Appellant,

v.

The STATE of Texas, Appellee.

No. 596–82.

Court of Criminal Appeals of Texas, En Banc.

Sept. 21, 1988.

---

Leonard Roth, Larry D. Dowell, Houston, for appellant.

William C. Wright, Co. Atty. and James O. Jenkins, Jr., Asst. Co. Atty., Orange,

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was charged with the offense of capital murder under V.T.C.A., Penal Code, § 19.03(a)(1). The indictment alleged that appellant, acting together with Clifford Blansett, on or about June 28, 1974, intentionally and knowingly killed Danny Gray by shooting him with a gun, knowing and being informed that he was a peace officer. Following a change of venue from Orange County to Harris County, appellant plead guilty to the indictment on April 30, 1975, and waived trial by jury.[1] The court assessed punishment at life imprisonment pursuant to an apparent plea bargain in which the State waived the death penalty.

This Court heard appellant's writ of habeas corpus under Article 11.07, V.A.C. C.P., and held "that the State cannot waive the death penalty in capital murder cases, and that the petitioner could not validly waive the right to trial by jury." *Ex parte Dowden*, 580 S.W.2d 364, 366 (Tex.Cr.App. 1979); see also Article 1.14(a), V.A.C.C.P. ("The defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a capital felony case.") Having granted relief, we remanded the case to the 182nd District Court. On August 22, 1979, a jury convicted appellant of capital murder. The court sentenced appellant to life imprisonment after the jury returned a negative finding on special issue number two under Article 37.07, § 2(b)(2), V.A.C.C. P.

On appeal the Court of Appeals, in an unpublished opinion, initially reversed and remanded the case on the ground that the trial court erred in failing to charge the jury on the lesser included offenses of involuntary manslaughter and criminally

---

1. Co-defendant Clifford Blansett was convicted of capital murder by a jury in the 128th District Court in Orange County. This Court affirmed the conviction. See *Blansett v. State*, 556 S.W. 2d 322 (Tex.Cr.App.1977).

negligent homicide. *Dowden v. State,* 638 S.W.2d 85 (Tex.App.—Houston [1st] 1982). The Court of Appeals subsequently withdrew its opinion, granted the State's motion for rehearing, and affirmed the conviction. *Dowden v. State,* 638 S.W.2d 85 (Tex.App. —Houston [1st] 1982) (Opinion on Rehearing).

We granted appellant's petition to review all six points addressed by the Court of Appeals. In three grounds for review appellant complains that the trial court erred in failing to charge the jury, despite his timely requests, on the lesser included offenses of aggravated assault, criminally negligent homicide, and involuntary manslaughter. Appellant also alleges that his motion for instructed verdict should have been granted, because a fatal and fundamental variance existed between the State's pleading and proof. Appellant's fifth ground for review claims that the State was erroneously allowed to voir dire the jury panel on the theory of causation as defined in V.T.C.A., Penal Code, § 6.04, thereby depriving appellant of his rights to effective assistance of counsel, a fair trial, and due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Appellant's final ground for review complains that both the trial court's charge on the definition of "intentional" and the statute upon which the charge was based, V.T.C.A., Penal Code, § 6.03, unconstitutionally shifted the burden of proof by creating a presumption that appellant intended to cause the result of his conduct.

The following statement of facts is adopted from the Court of Appeals' opinion:

"On June 28, 1974, at 1:00 a.m., the appellant's brother, Charles Ray Dowden, was arrested for robbing a 7–11 convenience store [clerk] in Orange, Texas. He was taken to the police station where he was booked and placed in the city jail on the second floor of the police station.

"The appellant, who had been at the convenience store with his brother, decided to aid his brother in escaping from jail, and he drove to his brother's house, where he picked up his sister-in-law, and told her of his plan to get his brother out of jail. The appellant and his sister-in-law then drove to Clifford Blansett's house, where they picked up a rifle and a pistol, and the three drove to the police station, arriving there around 4:00 a.m. on that same morning.

"The appellant and Blansett entered the police station and went to the dispatcher's booking office, where two police officers and one dispatcher were working. The appellant slammed open the door to the dispatcher's office, pointed an automatic pistol at the police officers and declared, 'I have come to get Charles.' The officers were stunned at the outset, but quickly regained their composure. Captain Gray (the deceased) lunged at the appellant, grabbed the hand in which he was holding the gun and, placing his other arm around the appellant's body, forced him into the hall. The door, operating on a spring closing device, closed automatically behind them. At this moment, the two men remaining in the office could not see what was happening, but they heard a shot fired in the hallway. No longer being able to see Captain Gray, they presumed that he had been shot by the appellant and was dead.

"Meanwhile, the officer remaining in the dispatcher's office, Officer Windham, drew his pistol, and the dispatcher, Denton, slipped into a small room adjoining the dispatcher's office to load a shotgun. There ensued an exchange of gunfire between the appellant and Officer Windham and Denton.

"After the fusillade subsided, Officer Windham heard 'moving around in the hall.' Whereupon Denton hollered, 'He's coming in through the door' (or 'He's at the door'). There was more 'moving around' and then another bullet came through the booking window. Following this last shot the door came 'crashing open,' and Windham immediately 'shot twice and then again.' According to Officer Windham's testimony, when he fired these shots he was on his knees at the edge of the booking counter closest

to the door. The pistol was in his left hand, around the corner of the cabinet, and aimed at the door. On cross-examination, Windham admitted that he did not look before he fired because he thought that only the appellant could be coming through the door. Upon being asked why he shot without looking, he said he thought that he would be killed if he did not.

"Officer Windham's three shots at the person in the doorway were the last shots fired. The two men, Windham and Denton, not knowing whether their assailants had left or whether they had taken a breather, radioed for help. It was not until Windham crawled back to join Denton in the back room that he knew that the man lying in the doorway was Captain Gray, and not the appellant. A ballistics examination revealed that Captain Gray was killed by Officer Windham." *Dowden*, supra, at 638 S.W.2d 86–87.

Appellant combines his first three grounds for review to complain of the trial court's refusal to charge the jury at the guilt-innocence stage on the lesser included offenses of aggravated assault, criminally negligent homicide, and involuntary manslaughter. Following trial, appellant timely requested a charge on the lesser included offenses. See Article 36.15, V.A.C.C.P. He argued to the trial court that the evidence that the victim was killed by Officer Windham "reduces the offense with which the defendant is charged from capital murder to aggravated assault, a felony of third degree under Article 22.02 of the State Penal Code." Appellant's special requested charge was denied. His timely objection to the charge, under Article 36.14, V.A.C.C.P., was also overruled.

With respect to appellant's requested charge on aggravated assault, the Court of Appeals noted that appellant engaged in a gun battle with the police firing three shots into the office where two police officers were hiding; that he directed the shots toward these officers; and that such action indicated more than merely aggravated assault. *Dowden*, supra, at 638 S.W.2d 87.

Article 37.09, V.A.C.C.P., provides that an offense is a lesser included offense if:

"(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

"(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

"(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

"(4) it consists of an attempt to commit the offense charged or an otherwise included offense." [2]

■ This Court enunciated its two pronged test to determine whether a charge on the lesser included offense is required in *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Cr.App.1981) (Opinion on Rehearing).

"First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense." *Royster*, supra, at 446.

See also *Lincecum v. State*, 736 S.W.2d 673, 678 (Tex.Cr.App.1987); *Moreno v. State*, 721 S.W.2d 295, 301–02 (Tex.Cr.App. 1986); *Godsey v. State*, 719 S.W.2d 578, 584 (Tex.Cr.App.1986); *Santana v. State*, 714 S.W.2d 1, 8 (Tex.Cr.App.1986); *Moreno v. State*, 702 S.W.2d 636, 640 (Tex.Cr.App. 1986); *Thomas v. State*, 701 S.W.2d 653, 656 (Tex.Cr.App.1985); *Thomas v. State*, 699 S.W.2d 845, 847 (Tex.Cr.App.1985); *Cordova v. State*, 698 S.W.2d 107, 113 (Tex.Cr.App.1985); *Rogers v. State*, 687 S.W.2d 337, 344 (Tex.Cr.App.1985); *Agui-*

---

**2.** Article 37.09, supra, has been ruled constitutional by this Court insofar as it authorizes "conviction upon an indictment charging one offense for a lesser included offense of the offense charged." *Day v. State*, 532 S.W.2d 302, 315 (Tex.Cr.App.1976) (Opinion on Rehearing); see also *Cunningham v. State*, 726 S.W.2d 151, 153 (Tex.Cr.App.1987).

*lar v. State,* 682 S.W.2d 556, 558 (Tex.Cr. App.1985); *Drew v. State,* 735 S.W.2d 655, 657 (Tex.App.—Austin 1987, PDR ref'd); *Hewitt v. State,* 734 S.W.2d 745, 748 (Tex. App.—Fort Worth 1987). The necessity for a charge on a lesser included offense must be determined on a case by case basis, and in determining this question *all* of the evidence at the trial, whether produced by the State or the defendant, must be considered. *Moreno,* supra, at 702 S.W.2d 640; see also *Eldred v. State,* 578 S.W.2d 721, 722 (Tex. Cr.App.1979); *Day,* supra, at 315–16. "If evidence from any source raises the issue and a jury charge on the issue is properly requested, the issue must be submitted to the jury." *Moreno,* supra, at 702 S.W.2d 640 [citing *Lugo v. State,* 667 S.W.2d 144 (Tex.Cr.App.1984) ].

■ Appellant contends under the record that the trial court should have charged the jury on the lesser included offense of aggravated assault. This Court has already held that aggravated assault may be a lesser included offense of murder under V.T. C.A., Penal Code, § 19.02(a)(1).[3] *Cato v. State,* 534 S.W.2d 135, 137 (Tex.Cr.App. 1976). Since the indictment in this case is for capital murder under V.T.C.A., Penal Code, § 19.03(a)(1), which refers to the murder of a peace officer, then under § 19.02(a)(1), an aggravated assault may be a lesser included offense of capital murder.

In the instant case it is clear that the State, in proving the alleged offense of capital murder, also proved the lesser included offense of aggravated assault. The first prong of the *Royster* test was therefore satisfied. A jury charge on the lesser included offense is not required, however, unless there is testimony raising the issue that the accused, if guilty, is guilty only of the lesser offense. A charge on the offense of aggravated assault would be required only if testimony was introduced from sources indicating a lack of *intent* on the part of appellant to kill the deceased. *See Curtis v. State,* 573 S.W.2d 219, 223 (Tex.Cr.App.1978).

---

**3.** V.T.C.A., Penal Code, § 19.02, reads in relevant part:
"(a) A person commits an offense if he:

■ The evidence adduced at trial shows that appellant drove to his brother Charles' house to pick up his sister-in-law Darlene after learning that Charles was in police custody. The two then drove to Blansett's house, where they picked up two loaded guns; all three then proceeded to the police station. Appellant and Blansett entered the station and *appellant* opened the door to the dispatcher's office to demand his brother's release. Appellant then engaged in a gun battle with police officers, which appellant himself initiated. Appellant's intentional conduct was further supported by his voluntary confession, which read in part:

"I walked up to the door to the Office, opened the door and said 'I want Charles Dowden.' I pulled the pistol out after I said that. I was standing in the doorway. One of the Officers grabbed me. I tried to hit him, but he was holding my arms. *I just started shooting then. I shot through the little window. I don't know how many times I shot, it must have been 6 or 7 times. I just kept pulling the trigger."* (Emphasis supplied.)

None of the evidence presented indicated that appellant was not aware of the risk involved in entering a police station with a loaded gun. The resulting death of the police officer would not have occurred but for appellant's intentional conduct.

In *Godsey,* supra, the defendant requested a charge on the lesser included offense of aggravated assault, arguing that his testimony showed that he did not intend to kill any police officer. The evidence showed the following:

"[The defendant] saw between twelve and twenty police officers, ignored their orders to put his hands on his head and slowly and deliberately pulled the loaded gun from his waistband. Again, he ignored officers' orders to put the gun down, officers who were pointing guns at him. He swung the gun in an arc and

---

"(1) intentionally or knowingly causes the death of an individual."

stopped, leveling and pointing it at the officers." *Godsey,* supra, at 584.

We noted that the evidence did not support any inference that · the defendant was guilty only of aggravated assault or reckless conduct due to the *deliberateness* of his actions. In the instant case appellant went even further in precipitating the gun battle with police officers. Consequently, there is no evidence to support the second prong of the *Royster* test, namely that there is some evidence in the record that if appellant is guilty, he is guilty of only the lesser offense. Appellant was not entitled to his requested charge on aggravated assault.

■ Likewise, the evidence does not support appellant's guilt *only* of criminally negligent homicide and involuntary manslaughter are both lesser included offenses of murder. *Smith v. State,* 721 S.W.2d 524, 526 (Tex.App.—Corpus Christi 1986); *Lugo,* supra, at 147; *Goodwin v. State,* 694 S.W.2d 19, 27 (Tex.App.—Corpus Christi 1985, PDR ref'd). "The difference between criminally negligent homicide and involuntary manslaughter is the culpable mental state required to establish each offense—criminal negligence for the former and recklessness for the latter." *Thomas,* supra, 699 S.W.2d at 849; see also *Lewis v. State,* 529 S.W.2d 550 (Tex.Cr.App.1975).

■ V.T.C.A., Penal Code, § 19.07(a), notes that "[a] person commits an offense if he causes the death of an individual by criminal negligence." V.T.C.A., Penal Code, § 6.03(d), gives the following definition for criminally negligent conduct:

> "A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person

would exercise under all the circumstances as viewed from the actor's standpoint."

It has been written that criminal negligence means the actor *should* have been aware of the risk surrounding his conduct, but *failed to perceive it. Richardson v. State,* 733 S.W.2d 947, 956 (Tex.App.—Austin 1987) (Emphasis in original).

In *Thomas,* supra, 699 S.W.2d 845, the defendant requested an instruction on criminally negligent homicide based on his testimony that he did not intend to shoot the victim; that it was an accident; and that it was in self-defense. In deciding whether the defendant met the "guilty only" prong of the *Royster* test, this Court determined that his testimony did not show that he possessed the requisite culpable mental state so that if guilty, he was guilty only of criminally negligent homicide. It was reasoned,

> "Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another, indicates a person who is aware of a risk created by that conduct and disregards that risk." *Thomas,* supra, 699 S.W.2d at 850.

We concluded that while the evidence could easily implicate a reckless mental state it did not implicate a negligent one. See also *Hayes v. State,* 728 S.W.2d 804, 810 (Tex. Cr.App.1987).

■ There is no question that the actions of appellant were sufficient to indicate that he should have been aware of the substantial and unjustifiable risk that his conduct might injure and kill the deceased. See and cf. *Dockery v. State,* 542 S.W.2d 644, 648 (Tex.Cr.App.1976) (Opinion on Rehearing); *Still v. State,* 709 S.W.2d 658 (Tex.Cr.App.1986). However, whether appellant acted intentionally or unintentionally is not the distinguishing factor in determining if the homicide was criminal. Instead, the important issue is whether the act is voluntary or involuntary.[4] *Ortiz v.*

---

4. The Court of Appeals noted this distinction when it wrote:

> "Thus we have decided that the question is not whether the actor, knowing his gun to be loaded and ready to shoot, and knowing that

*State*, 651 S.W.2d 764, 766–67 (Tex.Cr.App. 1983); *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Cr.App.1981); *Simpkins v. State*, 590 S.W.2d 129, 133 (Tex.Cr.App.1979); *Veracruz v. State*, 713 S.W.2d 745, 750–51 (Tex. App.—Houston [1st] 1986, PDR ref'd); *Ross v. State*, 658 S.W.2d 846, 849 (Tex. App.—Fort Worth 1983). The actions of appellant in the instant case toward the deceased were all voluntary and under the circumstances the issue of criminally negligent homicide was not raised.

■ Under V.T.C.A., Penal Code, § 19.05(a)(1), a person commits the offense of involuntary manslaughter if he recklessly causes the death of an individual. V.T.C.A., Penal Code, § 6.03(c), reads as follows:

"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

The specific intent to kill is not an element of involuntary manslaughter. *Gaona v. State*, 733 S.W.2d 611, 615 (Tex.App.—Corpus Christi 1987); *Yates v. State*, 624 S.W.2d 816, 817 (Tex.App.—Houston [14th] 1981).

In *Hayes*, supra, we noted:

"In accordance with the statutes and caselaw, a charge on reckless conduct must be given when evidence from any source raises the possibility that the defendant recklessly placed another in imminent danger of serious bodily injury through his or her conduct. The reckless mental state is satisfied by evidence which indicates that the defendant consciously disregarded a known substantial

and unjustifiable risk that the aforementioned serious bodily injury would occur; a risk of such a nature that its disregard constitutes a gross deviation from the standard of care an ordinary person would exercise under the circumstances. See V.T.C.A., Penal Code, § 22.05 and 6.03(c)." *Hayes*, supra, at 809.

We held in *Hayes* that a charge on reckless conduct should have been given, since the defendant testified that he did not intend to shoot the complainant and that the actual discharge of the gun was accidental.

■ On the other hand, there is no evidence in the instant case that appellant is guilty *only* of consciously disregarding a known substantial and unjustifiable risk that serious bodily injury would occur.

"State another way, there was not enough evidence to raise an issue of reasonable doubt whether he was acting other than intentionally or knowingly, so that the jury could have found that Appellant, ought to have been, but was not, aware that his conduct would create a substantial and unjustifiable risk resulting in the death of the deceased, ..." *Kuykendall v. State*, 609 S.W.2d 791, 797 (Tex.Cr.App.1980); see also *Dowden*, supra, 638 S.W.2d at 89; *Brooks v. State*, 548 S.W.2d 680 (Tex.Cr.App.1977).

Appellant voluntarily went to the police station and intentionally engaged in a gun battle with the police that resulted in the death of Captain Gray. There was no evidence that appellant was acting merely recklessly or with criminal negligence.

■ Appellant's statement to Darlene Dowden to the effect that he hoped he had not killed anyone during the "shoot out" does not entitle him to a charge on a lesser included offense. This statement, after the fact, does not reflect appellant's state of mind at the time he calmly and deliberately made his preparations to arm himself, enter the station, and initiate a gun battle. "Just because he did not intend the result does not change his awareness and percep-

others probably have loaded guns, recognizes the great risk that death might result from a confrontation and fires his gun when he finds himself in such a confrontation. Rather, the

question is whether 'he voluntarily fires the gun with the requisite culpable mental state." *Dowden*, supra, 638 S.W.2d at 88.

tion of the risk." *Still*, supra, at 661 [citing *Thomas*, supra, 699 S.W.2d at 850, and *George v. State*, 681 S.W.2d 43 (Tex.Cr. App.1984) ]. Since there is no evidence to show that appellant was guilty *only* of the lesser included offenses of aggravated assault, criminally negligent homicide and involuntary manslaughter, we hereby overrule his first three grounds for review.

 Appellant's fourth ground for review alleges that the trial court erred in not granting his motion for instructed verdict of "not guilty" as there was a fatal and fundamental variance between the State's pleading and proof. Appellant was charged with the offense of capital murder by an indictment which alleged in part:

"... that on or about the 28th day of June, A.D. 1974, ... Billy Wayne Dowden, Sr. and Clifford S. Blansett, acting together did then and there unlawfully, intentionally, and knowingly kill Danny L. Gray by shooting him with a gun, the said Danny L. Gray being then and there, a peace officer who was then and there acting in the lawful discharge of an official duty and the said Billy Wayne Dowden, Sr. and Clifford S. Blansett, acting together, then and there knowing, and being informed that the said Danny L. Gray was then and there a peace officer."

On September 19, 1979, at the close of the guilt-innocence stage of trial, appellant filed his motion for an instructed verdict of "not guilty," arguing that there was insufficient evidence to warrant his conviction and that the State had failed to prove any criminal intent on his part for the offense alleged in the indictment. The evidence clearly showed that police officer Bryan Windham shot and killed Danny Gray.

Appellant also complains that the Court of Appeals misapplied V.T.C.A., Penal Code, § 6.04(a), which reads:

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient."

The Court of Appeals cited this Court's opinion in *Blansett*, supra, as well as *People v. Gilbert*, 63 Cal.2d 690, 47 Cal.Rptr. 909, 408 P.2d 365 (1965), *rev'd on other grounds*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), to "conclude that there was ample basis upon which the jury could infer an intent to kill on the part of the appellant, and that the burden of proving intent, or lack thereof was not foisted on the appellant." *Dowden*, supra, 638 S.W.2d at 92.

*Blansett*, supra, addressed the identical contention raised by appellant, who now submits that our ruling in that case was incorrect and should be set aside. (Appellant's Brief, p. 18) Blansett was convicted of capital murder under the same indictment as the appellant, arguing on appeal that the proof at trial was at variance with the allegations in the indictment. Nevertheless, we found that the defendant, "by the application of our statutes to the circumstances of this case, is guilty of capital murder apart from the felony-murder doctrine if he *intentionally caused* the death of Gray." *Blansett*, supra, at 325 (Emphasis in original). We further found that Blansett acted intentionally by taking arms to the police station and engaging in the gun battle, and that his conduct *caused* Gray's death. See also *Davis v. State*, 597 S.W.2d 358, 360 (Tex.Cr.App.1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 388, 66 L.Ed. 2d 238 (1980); *Patterson v. State*, 632 S.W.2d 809, 812 (Tex.App.—Houston [14th] 1982, PDR ref'd).

In *People v. Gilbert*, supra, the defendant was convicted for the murder of his accomplice, even though the evidence showed that the accomplice was actually killed by a police officer. Writing for the majority, Chief Justice Traynor of the California Supreme Court recognized that apart from the felony-murder rule, "malice may be established when a defendant initiates a gun battle, and that under such circumstances he may be convicted of murder for a killing committed by another." *People v. Gilbert*, supra, 408 P.2d at 373 (citing Judge Traynor's opinion in *People v. Washington*, 62 Cal.2d 777, 781–82, 44 Cal.

Rptr. 442, 402 P.2d 130, 133 (1965), in which he noted that "when the defendant intends to kill or intentionally commits acts that are likely to kill with a conscious disregard for life, he is guilty of murder even though he uses another person to accomplish his objective.") More recently the California Supreme Court explained that the *"Gilbert* test" sought "to provide the trier of fact with a guideline for determining whether the malicious conduct, rather than the underlying felony, *proximately caused* the victim's death." *Pizano v. Superior Court of Tulane City,* 21 Cal.3d 128, 145 Cal.Rptr. 524, 577 P.2d 659, 661 (1978) (Emphasis in original).[5]

In the instant case all of appellant's actions were voluntary. Under our present case law the evidence is sufficient to prove that appellant intentionally and knowingly caused the death of Captain Gray, knowing that he was a peace officer. By acting intentionally, appellant showed that he was aware of the nature of his conduct and that initiating a shoot-out in the police station would result in the death of one of the officers on duty. The evidence is also sufficient to prove that appellant acted knowingly and therefore his malicious conduct was sufficient to hold him criminally responsible for Captain Gray's resulting death. See *Blansett,* supra, at 325; *Davis,* supra, at 159; *Griffin v. State,* 614 S.W.2d 155, 159 (Tex.Cr.App.1981); *People v. Gilbert,* supra, 408 P.2d at 373; *People v. Caldwell,* 36 Cal.3d 210, 203 Cal.Rptr. 433, 681 P.2d 274, 281 (1984) ("[D]efendants' malicious conduct of fleeing in a dangerous

high-speed chase, confronting the officers with a weapon when the chase ended and further preparing to shoot it out with the deputies was a proximate cause of [co-defendant's] death."); *Johnson v. State,* 386 P.2d 336 (Okl.Cr.App.1963) (Where an accused commits an assault designed to produce injury or death upon officers of the law, and injury or death does result without any intervening cause, but from an instinctive retaliatory force, the accused is criminally responsible.); *Miers v. State,* 157 Tex.Cr.R. 572, 251 S.W.2d 404 (1952) (Where defendant set in motion the cause which occasioned the death of deceased, the fact that the deceased had accidently shot himself during scuffle after wrestling gun from armed robber was no defense.) We adhere to our previous ruling in *Blansett,* supra, and accordingly overrule appellant's fourth ground for review.[6]

In his fifth ground for review appellant contends that the "trial court committed reversible error in allowing the state to voir dire the jury panel on a theory not alleged in the indictment which therein denied appellant his Fifth, Sixth and Fourteenth Amendment rights of due process of law, fair trial, and effective assistance of counsel."

The "theory" to which appellant has reference is that of "causation" set forth in V.T.C.A., Penal Code, § 6.04.

The Court of Appeals rejected this contention when it was advanced as a point (nee ground) of error and appellant fails to show or demonstrate why the Court of

---

**5.** The *Pizano* case held that the *"Gilbert* test"— whether the killing was in response to malicious conduct in addition to the underlying felony—is inapplicable to "shield" cases. In such cases an armed robber, using his victim as a shield to effect escape, is charged with murder under an implied malice theory when a third party accidentally kills the victim while trying to prevent the robber's escape. An early Texas case upheld the murder conviction of an accused and three others who thrust a victim in front of them as a shield while attempting to escape after a train robbery. *Taylor v. State,* 41 Tex.Cr.R. 564, 55 S.W. 96 (1900); see also *Keaton v. State,* 41 Tex.Cr.R. 621, 57 S.W. 1125, 1129 (1900) (Companion case to *Taylor* in which our Court noted that defendant, knowing that "shield" victim might be fired upon, was "responsible for the

reasonable, natural, and probable result of his act, to wit, placing deceased in a place of danger, where he would probably lose his life.")

**6.** For cases upholding felony-murder convictions despite the fact that they were based on the killing of a police officer by a fellow officer, see *Losano v. State,* 15 Ariz. 115, 136 P. 864 (Sup.Ct.1913); *People v. Podolski,* 332 Mich. 508, 52 N.W.2d 201 (Sup.Ct.1952), *cert. den.,* 344 U.S. 845, 73 S.Ct. 62, 97 L.Ed. 657 (1952), *reh. den.,* 344 U.S. 888, 73 S.Ct. 185, 97 L.Ed. 687 (1952); *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 261 A.2d 550 (Sup.Ct.1970); *People v. Hickman,* 59 Ill.2d 89, 319 N.E.2d 511 (Sup.Ct.1974), *cert. den.,* 421 U.S. 913, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975).

Appeals was in error in reaching its conclusion. See *Degrate v. State*, 712 S.W.2d 755 (Tex.Cr.App.1986).

Although appellant contends he objected many times during the voir dire examination he does not point out in his brief just where in the record any objection was made.

Be that as it may we observe that V.T.C.A., Penal Code, § 6.04(a), provides:

"(a) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor was clearly insufficient."

And it has been held that § 6.04(a) does apply to V.T.C.A., Penal Code, § 19.02(a)(1), which provides that a person commits murder if he intentionally or knowingly causes the death of an individual. See *Williams v. State*, 567 S.W.2d 507, 509 (Tex.Cr.App.1978), citing *Blansett v. State*, 556 S.W.2d 322 (Tex.Cr.App.1978). See also *Martinez v. State*, 533 S.W.2d 20 (Tex.Cr.App.1976); *Braxton v. State*, 528 S.W.2d 844 (Tex.Cr.App.1975); *McNeal v. State*, 600 S.W.2d 807, 808 (Tex.Cr.App. 1980).

■ The capital murder indictment in the instant case was drafted under V.T.C.A., Penal Code, § 19.03, and alleged murder under § 19.02(a)(1). Appellant does not contend that an offense was not properly alleged. He does contend that § 6.04(a) must be alleged in the indictment, however, for it to come into play, and that since it was not so alleged in the instant indictment the prosecutor should not have been permitted to refer to it in the voir dire examination of the jury panel. Appellant cites no authority.

The Court of Appeals answered appellant's contention by stating:

"The appellant's claim that § 6.04(a) should have been included in the indictment as a theory upon which the conviction was based, was also addressed in the companion case to this one, *Blansett v.*

*State*, 556 S.W.2d 322 (Tex.Cr.App.1977), and rejected by the Court of Criminal Appeals. Noting that the section is merely supplementary, and secondary to those substantive sections in which offenses are defined, the Court concluded that § 6.04 need not be set out in the indictment. See also *McNeal v. State*, 600 S.W.2d 807, 808 (Tex.Cr.App.1980)." *Dowden*, supra, 638 S.W.2d at 91.

While we do not find that the holding in *Blansett* is as clear-cut as indicated by the Court of Appeals in the quote above, we conclude that the right result was reached.

■ The conduct of the voir dire examination rests within the sound discretion of the trial court. *Clark v. State*, 608 S.W.2d 667, 669 (Tex.Cr.App.1980), citing *Weaver v. State*, 476 S.W.2d 326, 327 (Tex.Cr.App. 1972); *Moore v. State*, 542 S.W.2d 664, 668 (Tex.Cr.App.1976); *Hernandez v. State*, 506 S.W.2d 884, 886–887 (Tex.Cr.App.1974). Only abuse of such discretion will call for reversal on appeal. *Smith v. State*, 513 S.W.2d 823, 825 (Tex.Cr.App.1974); *Abron v. State*, 523 S.W.2d 405, 407 (Tex.Cr.App. 1975).

Since § 6.04(a) need not be set out in the indictment in the instant cause for it to have later application in the cause, it was not an abuse of discretion for the trial court to have allowed the prosecutor to make reference thereto in the voir dire examination of the jury panel. See and cf. *Boone v. State*, 629 S.W.2d 786, 788 (Tex. App.—Houston [14th] 1981); *Phillips v. State*, 511 S.W.2d 22, 27 (Tex.Cr.App.1974).

Appellant's fifth ground of review is overruled.

■ In appellant's sixth and last ground for review he contends his conviction should be reversed because V.T.C.A., Penal Code, § 6.03(a), is unconstitutional in that it shifts the burden of proof on an essential element of the offense onto the accused and that the definition of the term "intentional" in § 6.03(a) as used in the court's charge deprived him of the due process of law in violation of the Fourteenth Amendment. He also urges that his rights to due process, a fair and impartial

trial and effective assistance of counsel guaranteed by Article I, §§ 10 and 19 of the Texas Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution were violated.

V.T.C.A., Penal Code, § 6.03(a) and (b) (Definition of Culpable Mental States), provides:

"(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

"(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

The trial court charged abstractly in the exact language of the above quoted statute, and we find no objection to the court's charge on the basis now urged on appeal, and appellant has not directed our attention to any such objection.

In rejecting appellant's contention the Court of Appeals stated:

"We conclude that there was ample basis upon which the jury could infer an intent to kill on the part of the appellant, and that the burden of proving intent, or lack thereof, was not foisted on the appellant."

The same contention now made by appellant has been twice rejected by the Fourteenth Court of Appeals. In *Patterson v. State*, 632 S.W.2d 809, 812 (Tex.App.—Houston [14th] 1982), pet. ref'd. The court noted:

"In our opinion the statutory definition merely allows the jury to infer from evidence of a defendant's conduct that such conduct was intentional. See and compare: *Davis v. State*, 597 S.W.2d 358

(Tex.Cr.App.1980); *Bowers v. State*, 570 S.W.2d 929 (Tex.Cr.App.1978). 'One's acts are generally reliable circumstantial evidence of his intent.' *Phillips v. State*, 597 S.W.2d 929, 936 (Tex.Cr.App.1980). We hold that the statutory definition utilized in the Court's charge properly placed on the State the burden of proof on the issue of intent."

Similarly, in *Houston v. State*, 667 S.W.2d 157, 162 (Tex.App.—Houston [14th] 1982, PDR ref'd),[7] it was written that "[t]he definition merely provides that in order to prove the culpable mental state of intent, evidence must be presented which proves beyond a reasonable doubt that it was an accused's 'conscious objective or desire to engage in the conduct or cause the result.' "

In the instant case the trial court properly charged the jury that "[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." The court also instructed the jury that "[t]he defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, and in case you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you and these instructions, you will acquit him." Given the facts of this case, and taking into account our previous holding concerning appellant's intentional and voluntary acts, we now hold that the court's charge did not impermissibly shift the burden of proof on an essential element of the offense onto appellant and violate his constitutional rights. Appellant's ground for review is overruled.

The judgment of the Court of Appeals is accordingly affirmed.

TEAGUE and WHITE, JJ., concur in the result.

CLINTON, Justice, dissenting.

In *Blansett v. State*, 556 S.W.2d 322, at 325 (Tex.Cr.App.1977), in a companion case

7. After the PDR was refused the Court of Criminal Appeals wrote on Houston's motion for rehearing only to consider the correct standard

for review of cases based on circumstantial evidence, *Houston v. State*, 663 S.W.2d 455 (Tex.Cr. App.1984).

to this one, Commissioner Dally held, in an opinion approved by the Court, that "by the application of our statutes to the circumstances of this case, [Blansett] is guilty of capital murder apart from the felony murder doctrine, if he *intentionally caused* the death of Gray." Commissioner Dally went on to reason:

"The evidence shows that [Blansett] along with Billy Wayne Dowden consciously went to the Orange city jail with firearms to use those firearms with a conscious disregard for life; they *intentionally* engaged in that conduct, as the term intentionally is defined by V.T.C.A. Penal Code, Section 6.04(a). [footnote omitted.] The shooting of Gray would not have occurred but for the conduct of [Blansett] and Billy Wayne Dowden, and this conduct was the *cause* of Gray's death, as causation is defined by V.T.C.A. Penal Code, Section 6.04(a). [footnote omitted.] The shooting of Gray by Windham was not a concurrent cause of Gray's death."

*Id.* In support of this last proposition the Court cited caselaw from California, much of which the majority revisits today. Finally it was noted that holdings similar to those found in the California cases may be found in this Court's precedents interpreting our former penal codes.

The court of appeals in the instant case relied upon our opinion in *Blansett,* and, elaborating upon the California case principally cited therein, *People v. Gilbert,* 63 Cal.2d 690, 47 Cal.Rptr. 909, 408 P.2d 365 (1965), correctly noted that in order to find an accused guilty of murder under Califor-

nia law for an act committed by a nonaccomplice third party, two determinations must be made. First there must be found proof of "malice aforethought," or, as the court of appeals translated it in context of our own statutory scheme, "proof of an intent to kill," on the part of the accused.[1] Secondly, the killing must be attributable to the act of the accused or his accomplice. The court of appeals had little difficulty finding sufficient evidence of an intent to kill on appellant's part in this cause, and indeed, it is hard to argue that by firing upon the officers appellant did not manifest such an intent. However, after noting the second requirement, and quoting a germane passage from *Gilbert,* supra,[2] the court of appeals failed to inquire whether in fact Officer Windham's shooting of Gray can be attributed to appellant—whether it can be said appellant "caused" Gray's death.

The majority now undertakes to resolve this latter inquiry by simply adhering to the Court's holding in *Blansett,* supra, and uncritically reviewing the California authorities cited there, and other California cases decided since. It was my understanding, however, that the Court granted appellant's petition for discretionary review in this cause in order to take a second look at *Blansett* and its progenitors, to determine whether we erred in importing California common law wholesale into our interpretation of V.T.C.A. Penal Code, § 6.04(a).

Under California law, provoking a shootout with police may indeed constitute sufficient evidence of "malice aforethought,"

---

**1.** "'Murder is the unlawful killing of a human being, with malice aforethought.' (Pen.Code, § 187.) Such malice is implied under Penal Code section 188 when the defendant or his accomplice 'for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death.' (*People v. Washington,* 62 Cal.2d 777, 782, 44 Cal.Rptr. 442, 446, 402 P.2d 130, 134, quoting *People v. Thomas,* 41 Cal.2d 470, 480, 261 P.2d 1 [concurring opinion].) Initiating a gun battle is such an act." 408 P.2d at 373.

**2.** "When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and

his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with the conscious disregard for life. Thus, the victim's self-defensive killing or the police officer's killing in the performance of his duty cannot be considered an independent intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice." 408 P.2d at 373–74.

the required *mens rea* for murder. Additionally, if the policeman's act of returning fire is reasonable in response to the provocation, the provocation itself may also supply the required culpable act, inasmuch as it "caused" the act which in turn resulted in the killing. The provocation is thus a "proximate cause" of death, and the policeman's act "cannot be considered an independent intervening cause for which the defendant is not liable[.]" *People v. Gilbert*, 408 P.2d at 374. So far as the cases indicate, this California doctrine is purely court-made, with no basis in statute. The doctrine implies something more restrictive than a pure "but/for" concept of causation, but the limitations are still being hammered out by the California courts. E.g., *Pizano v. Superior Court of Tulare County*, 145 Cal.Rptr. 524, 577 P.2d 659 (1978); *People v. Caldwell*, 36 Cal.3d 210, 203 Cal.Rptr. 433, 681 P.2d 274 (1984). In my view there is no call for this Court to mimic the California courts' efforts to define the limits of culpable causation in this or any other context, because our § 6.04, supra, provides its own limitation.

In § 6.04(a), supra, notions of "proximate cause" found in our earlier caselaw were jettisoned in favor of a concept of "sufficient cause"—a result that would not have occurred in the way that it did "but for" the accused's conduct may be attributed to him "unless" there is a concurrent cause and "the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." Bubany, *Texas Penal Code of 1974*, 28 S.L.J. 292, at 307–8 (1974). See also *Robbins v. State*, 717 S.W.2d 348 (Tex.Cr.App.1986). In *Blansett*, supra, the Court found that "but for" the conduct of Blansett and appellant in entering the police station armed and with "a conscious disregard for life[,]"

Gray would not have been killed. Hence, Blansett "caused" his death. That Officer Windham actually shot Gray was deemed not to be a concurrent cause. At first glance this latter holding seems pure *ipse dixit*. Closer scrutiny reveals that it is by utilization of this notion of "proximate cause," gleaned from the California cases and Texas cases decided before enactment of the 1974 Penal Code, that the Court was able to conclude Windham's conduct was not a causal component to Gray's death. This seems to me a subversion of the statute. In order to avoid application of the new "sufficient cause" standard to determine whether Windham's conduct in actually shooting Gray would operate to exculpate Blansett of capital murder, the Court relied upon a doctrine of "proximate cause," the rejection of which was at least "partially achieved" in the final version of § 6.04, supra, if we are to believe the Practice Commentary, at 94, to deny what would otherwise seem intuitively obvious— that Windham's conduct *was* in some sense a "cause" of Gray's death, and perhaps within what the legislature meant by "concurrent cause."

I am inclined to hold not only that Windham's act of shooting was a concurrent cause of Gray's death, but also that it was "clearly sufficient" to cause that result, while appellant's conduct, even in "intentionally" entering the station "with a conscious disregard for life[,]" was, by itself, clearly insufficient. Had Windham not fired on Gray, he would not have been killed. On the other hand, appellant's "disregard for life" would not have resulted in Gray's death if Windham had not shot Gray.[3] It seems to me that on the facts of this case appellant cannot be prosecuted for intentionally, knowingly, recklessly or negligently "causing" Gray's death.[4] This

---

**3.** To answer that absent appellant's conduct Windham would not have been in a position accidentally to kill Gray is to read the "sufficient cause" standard right out of § 6.04, supra, and render it a pure "but/for" test for causation, with no accounting whatsoever for intervening or "concurrent" cause.

**4.** Thus, I agree with the majority's conclusion appellant was not entitled to lesser included

instructions for involuntary manslaughter and negligent homicide. The evidence no more raised these than it did murder. Whether appellant was entitled to an instruction on aggravated assault would seem to me under our law to depend on whether the evidence was susceptible to a finding that in firing on the officers appellant harbored no specific intent or awareness that death would result.

is not to say he could not be found guilty of attempted capital murder or aggravated assault, in that he fired upon peace officers with an apparent intent to kill. See *Bubany,* supra, at 308.

In adhering to the errors of *Blansett,* supra, the majority today engages in a chaotic analysis. First it observes that "all of appellant's actions were voluntary." At 273. While that is undoubtedly true, its significance escapes me. Next the majority declares that under our caselaw "the evidence is sufficient to prove that appellant intentionally and knowingly caused the death of Captain Gray...." *Id.* Presumably this statement is simply an observation which the majority then endeavors in succeeding sentences to justify, for as analysis it utterly begs the question. What follows, however, does not rationally support the observation. "By acting intentionally," the majority continues, presumably referring to his having gone armed into the police station, "appellant showed he was aware of the nature of his conduct and that initiating a shoot-out in the police station would result in the death of one of the officers on duty." *Id.* Apparently by this the majority means that appellant's "conscious disregard for life[,]" as Commissioner Dally put it in *Blansett,* was such as to impute to him an awareness, i.e., "knowledge" that death would result. But result from what? The majority seems further to impute causation from guilty *mens rea,* for it concludes in a non sequitur "that appellant acted knowingly and therefore his malicious conduct was sufficient to hold him criminally responsible for Captain Gray's resulting death." By this I believe the majority awkwardly reiterates, in terms foreign to our statutory homicide scheme (i.e., "malice"), the same mistake we made in *Blansett,* supra, *viz:* to identify a guilty intent, nonspecific to the killing itself, and from it attribute cause ("proximate cause") so as to escape the conclusion that Windham's act may have been a concurrent cause.[5] In reality the Court is making the

policy judgment that appellant's "malice" under the circumstances justifies holding him "criminally responsible" for a result we cannot easily conclude in ordinary terms he alone "caused."

Whether such a policy is laudable is not the issue here. The question we should confront, rather, is whether § 6.04, supra, allows room for this Court to impute causation as it did in *Blansett,* supra. That is what I thought we granted appellant's petition to address. Because the majority does not, I must respectfully dissent.

---

5. Even under California law, more than malice is required to impute criminal responsibility to the accused. Some act or provocation is also required, see text *ante.* The majority seems to blur the distinction, as indeed may have the California courts. See *People v. Caldwell,* supra (Bird, C.J., dissenting).