**Affirmed and Memorandum Opinion filed February 10, 2015.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-13-01037-CR

**PATRICK SHARARD GUILLORY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 1340306**

## MEMORANDUM OPINION

In this appeal from a conviction for capital murder, we consider whether the evidence is legally sufficient to support the conviction, whether the trial court erred by declining a request for multiple jury instructions, and whether the trial court erred by overruling an objection to an improper closing statement. We conclude that the evidence is sufficient and that there is no reversible error as to each remaining issue. We therefore affirm the trial court's judgment.

# BACKGROUND

Raul Amaro, the complainant in this case, died from a single gunshot wound to the chest. The shooting happened just outside of a convenience store in southwest Houston. Authorities came to suspect that appellant was the shooter, and that he had murdered Amaro during the course of a robbery.

The case against appellant was built on circumstantial evidence. One key witness was Rogelio Vasquez, who testified that he had driven two men to the convenience store on the night of the shooting. Vasquez said that he picked the two men up after they had flagged him down on the side of the road. Vasquez recognized one of the men as Tyreon Young, who was the relative of a former classmate. Young climbed into the front passenger seat, and the other man sat in the back. Vasquez did not know the backseat passenger, and at trial, Vasquez could not offer any testimony as to whether the backseat passenger was appellant. (Darius Rose, another witness whose testimony is more fully discussed below, would later identify appellant as Vasquez's backseat passenger.)

Vasquez offered to take his two passengers to the convenience store, where he intended to buy a beer. On the way there, Young asked Vasquez where he could "hit a lick," which is street slang for robbing someone. Vasquez testified that the backseat passenger added, "Yeah, we need some money." The backseat passenger pulled a gun out of his jacket, which Vasquez believed to be a revolver. Vasquez told the men not to rob anyone at the convenience store because his dad would often drink there and he knew the regular customers. The men responded that they would try to rob someone at a nearby restaurant instead.

When they arrived at the convenience store, Vasquez and his passengers parted ways. Vasquez opened the trunk of his car to inspect his stereo system, which he thought was malfunctioning. Vasquez saw his passengers approach Rose,

who had just exited a car in a nearby parking space. After a short while, Vasquez testified that he heard four shots rings out in the vicinity. Vasquez looked across the parking lot in the direction of the shooting and saw a portion of the gunman's arm, but not the rest of his body, which was apparently obstructed from view.

Miguel Frias was pumping gas when the shots were fired. He looked up and saw Amaro run out from the side of the convenience store and then collapse on the ground. Frias approached Amaro, who said that "two black guys [had] robbed him." Both Young and appellant are African Americans, but Frias saw neither of them on the night of the murder.

Alex Flores and Ivan Martinez were drinking with Amaro shortly before the shooting occurred. Neither man testified at trial, but their witness statements were retold through a sheriff's deputy who had interviewed them on the night of the incident. According to the deputy, Flores and Martinez said that two robbers came from behind the convenience store and attacked Amaro, who tried to fight back. The robbers reportedly knocked Amaro down, then dragged him to a telephone pole. Martinez tried to intervene, but he and Flores ran away from the fight because one of the robbers began shooting at them.

James Hanson arrived at the convenience store moments after Vasquez. Hanson and Vasquez were familiar with each other, and they exchanged greetings as Vasquez was inspecting his stereo system. When Hanson turned to head inside the convenience store, he observed Young, another familiar face, fighting with an Hispanic male around the corner. Hanson testified that Young pushed the other man down, then Young lifted his hands and looked around to see if anyone wanted to fight back. Hanson claimed that he then saw another man's hand extend from behind the corner of the building, holding a gun. Hanson ran away at the sight of the gun. He heard shots fired but he did not see the shooter.

3

Rose was a passenger in Hanson's car. When he arrived at the convenience store, Rose testified that he saw Vasquez, who had driven there with two male passengers. Rose identified the two passengers as Young and appellant, both of whom he had known previously. Rose spoke briefly with Young and appellant, and then they left in different directions.

A security camera captured the meeting between the three men, but the resolution was not high and the figures were mostly grainy. According to Rose, the surveillance footage showed Young and appellant heading towards the rear exterior of the convenience store, away from any public entrance. Their path could have taken them around to the location where the shooting occurred, but there was no footage confirming that they had taken that circuitous route.

Before the shots were fired, Rose testified that he saw Young fighting with Flores across the parking lot, on the opposite side of the convenience store where Vasquez and Hanson had parked. As with every other witness, Rose testified that he heard gunfire, but he did not see the shooter.

The medical examiner found muzzle abrasions and soot in Amaro's wound, indicating that he had been shot at point-blank range. The medical examiner also found a bullet fragment, which a forensics investigator determined was consistent with a revolver round. Another investigator opined that a revolver could have been used in the murder because no bullet casings were found at the crime scene. The murder weapon itself was not recovered.

## SUFFICIENCY OF THE EVIDENCE

To obtain a conviction for capital murder, the State was required to prove that appellant murdered Amaro and that the murder was intentionally committed during the course of a robbery. *See* Tex. Penal Code § 19.03(a)(2). Appellant

4

contends that his conviction should be set aside because there is no evidence that he murdered Amaro or that a robbery ever took place.

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The evidence is insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and improperly admitted evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Even though there was no eyewitness testimony regarding the identity of the shooter, a rational jury could have found beyond a reasonable doubt that appellant was the person who had murdered Amaro. The undisputed evidence showed that three Hispanic men were attacked outside of a convenience store by

5

two African-American men. The record supported a finding that Young was one of the attackers. Two witnesses (Hanson and Rose) testified that they each saw Young fighting with one of the Hispanic men in the moments before the shooting.

Another witness (Vasquez) testified that he had driven Young to the convenience store with a second African-American man, and during the commute, the two passengers had discussed the possibility of robbing someone. Vasquez testified that the backseat passenger had exhibited a firearm that appeared to be a revolver, which could have been used as the murder weapon. Although Vasquez could not confirm that appellant was his backseat passenger, Rose testified that he affirmatively saw appellant exiting Vasquez's car with Young when they both arrived at the convenience store. The jury could have reasonably determined that appellant participated in the robbery with Young, and that appellant shot Amaro with the revolver witnessed by Vasquez.

Appellant contends that there is no evidence that the murder was committed during the course of a robbery because the record showed that a large amount of money was still found in Amaro's wallet. Appellant appears to suggest that a completed theft is required before a robbery can occur, but that is mistaken; an attempted theft is sufficient. *See* Tex. Penal Code §§ 29.01(1), 29.02; *see also id.* § 19.03(a)(2) (a person commits a capital murder if he intentionally commits a murder "in the course of committing or attempting to commit . . . robbery").

Here, Vasquez testified that Young and the backseat passenger had expressed a desire to "hit a lick," or rob someone. Hanson and Rose witnessed Young physically attacking an Hispanic male, which is consistent with an attempt to commit a theft. Amaro also said in his final moments that "two black guys [had] robbed him." From this evidence, the jury could have reasonably determined that Amaro's murder was committed during the course of a robbery.

6

The jury could have also found that the murder was intentional. The medical examiner testified that Amaro died from a single gunshot, which had been fired into the chest at point-blank range. This evidence supported a finding that appellant fired the shot with the deliberate intent to kill. *See Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986) ("The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result." (citations omitted)); *Nickerson v. State*, 312 S.W.3d 250, 262 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (a "point-blank shot" supports a finding that the shot was intentional).

Viewing the record in the light most favorable to the verdict, we conclude that there is sufficient evidence from which a jury could find every element of the offense beyond a reasonable doubt.

## ACCOMPLICE-WITNESS INSTRUCTION

Appellant argues in his next issue that the trial court reversibly erred by refusing his request to give an accomplice-witness instruction. Appellant contends that Vasquez was an accomplice, and that the instruction was therefore warranted.

We review a complaint of jury-charge error under a two-step process, considering first whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error does exist, we then analyze that error for harm under the procedural framework of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

An accomplice is someone who participates with the defendant before, during, or after the commission of a crime, and who acts with a culpable mental state. *See Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Under Texas law, a conviction cannot be had on the testimony of an accomplice unless

the testimony is corroborated by other evidence tending to connect the defendant with the offense committed. *See* Tex. Code Crim. Proc. art. 38.14. The corroborating evidence is not sufficient if it merely shows the commission of the offense. *Id.*

To be considered an accomplice, the person's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged. *See Druery*, 225 S.W.3d at 498. A person is not an accomplice witness merely because the person knew of the offense and did not disclose it. *Id.* Furthermore, the person's presence at the crime scene does not make the person an accomplice. *Id.* A person is only an accomplice if the person could be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge. *Id.*

A trial court should instruct the jury that a person is an accomplice witness as a matter of law if there is no doubt that the person is an accomplice. *Id.* This standard is met if the person has been charged with the same offense as the defendant or if the evidence clearly shows that the person could have been so charged. *Id.* If there is a question whether the person is an accomplice, the court should allow the jury to decide whether the person is an accomplice as a matter of fact. *Id.* at 498–99. In either case, there must be some evidence of an affirmative act on the part of the person to assist in the commission of the charged offense before an accomplice-witness instruction is required. *Id.* at 499.

Appellant argues that Vasquez was an accomplice because he drove his two male passengers to the convenience store after learning of their plan to commit a robbery. Assuming without deciding that this evidence raised a question of fact as to whether Vasquez was an accomplice, we must determine whether the trial court's error in refusing to give an accomplice-witness instruction was harmful.

An accomplice-witness instruction does not say that the jury should be skeptical of accomplice-witness testimony. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). Nor does it tell the jury that such testimony must receive less weight than other evidence. *Id.* The instruction merely informs the jury that it cannot use the accomplice-witness testimony unless there is also some non-accomplice evidence connecting the defendant to the offense. *Id.* Once it is determined that such non-accomplice evidence exists, the purpose of the instruction is fulfilled, and the instruction plays no further role in the jury's decision-making. *Id.* Therefore, non-accomplice evidence can render harmless a failure to submit an accomplice-witness instruction by fulfilling the purpose an accomplice-witness instruction is designed to serve. *Id.*

A harm analysis for the omission of an accomplice-witness instruction is supposed to be flexible, taking into account the existence and strength of any non-accomplice evidence and the applicable standard of harm. *Id*. We examine the strength of non-accomplice witness testimony by its reliability or believability, and by the strength of its tendency to connect the defendant to the crime. *Id.* The reliability inquiry may be satisfied if there is non-accomplice witness evidence, and there is no rational and articulable basis for disregarding the evidence or finding that it fails to connect the defendant to the offense. *Id.* at 633.

The applicable standard of harm depends upon whether the defendant preserved error by bringing the improper omission to the trial court's attention. *Id.* at 632. When the defendant has failed to preserve error, he must show egregious harm. *Id.* But when, as here, the error is properly preserved, a reversal is required if just "some harm" is shown. *Id.*

Error is harmless under the "some harm" standard when there is a substantial amount of non-accomplice evidence and the evidence of the witness's accomplice

status was tenuous, or barely enough to support submission of an instruction that the witness was an accomplice as a matter of fact. *Id.* at 633 (citing *Medina v. State*, 7 S.W.3d 633 (Tex. Crim. App. 1999)). The Court of Criminal Appeals has also held that error is harmless when the corroborating evidence is so strong that "it becomes implausible that a jury would fail to find that it tends to connect the accused to the commission of the charged offense." *See Casanova v. State*, 383 S.W.3d 530, 539–40 (Tex. Crim. App. 2012). At that level of strength, a reviewing court may safely conclude that the resultant harm is "purely theoretical" because, if the trial court had given the instruction, the jury would have almost certainly found that the testimony of the accomplice witness was corroborated. *Id.*

Turning first to the non-accomplice testimony, we note that there is reliable evidence connecting appellant to the commission of a capital murder. The jury heard through the testimony of a sheriff's deputy that Flores and Martinez had been drinking with Amaro in the moments before the shooting. Flores and Martinez reported that two African-American men came from behind the convenience store and attacked Amaro. Two other witnesses, Hanson and Rose, established that Young was one of the attackers. Although neither witness saw the face of the second attacker, Hanson affirmatively testified that the second attacker had a gun and that Young could not have been the shooter.

The identity of the second attacker was the only real dispute at trial, and Rose's testimony strongly suggested that the second attacker was appellant. Rose established that Young and appellant had arrived together at the convenience store, having both been passengers in Vasquez's car. Video surveillance captured a brief meeting in the parking lot between Rose, Young, and appellant. The surveillance footage also showed Young and appellant walking away from Rose towards the rear exterior of the convenience store, where their path could have taken them to

the area where Amaro, Flores, and Martinez had been drinking. The surveillance footage did not reveal any other person in the vicinity of Young and appellant, and there was no testimony from a non-accomplice witness that a person other than appellant had intervened or assisted Young. Considering that the shooting happened shortly after Young and appellant had left the view of the security camera, the evidence strongly supported a finding that appellant attacked Amaro with Young, and that appellant was the one who fired the gun.

Turning next to the evidence supporting an accomplice-witness instruction, we note that there is much less evidence showing that Vasquez acted with a culpable mental state. There is no affirmative evidence that Vasquez knew about the criminal intentions of his passengers when he initially encountered them on the side of the road. Vasquez testified that he learned of their plan to commit a robbery during the commute, and when he acquired this knowledge, Vasquez pleaded with his passengers to not commit a robbery at the convenience store because he knew many of the people who frequented there. The passengers responded by assuring Vasquez that they would rob someone at a different location instead. There is no evidence that Vasquez agreed to drive the passengers to that different location, or that he would share in the spoils of any robbery that the passengers actually committed.

We suppose that a jury could have rejected Vasquez's testimony and inferred an intent to assist in the commission of a robbery, but such an inference could be made only on the basis that Vasquez continued to drive his passengers to the convenience store after learning of their plan to commit a robbery. If, in the eyes of the jury, that inference were unreasonable, then Vasquez was clearly not an accomplice. *See Kunkle v. State*, 771 S.W.2d 435, 438–41 (Tex. Crim. App. 1986) (a witness was not an accomplice, despite his knowledge of a plan to commit a

robbery, where the witness was only a passenger in the car and he did nothing to assist or encourage his group in the commission of the robbery); *Moore v. State*, 984 S.W.2d 783, 788 (Tex. App.—Waco 1999, no pet.) (a witness who drove the defendant to the scene of a robbery was not an accomplice where the evidence showed that the witness had no prior knowledge of the defendant's plan to commit the robbery); *cf. Gross v. State*, 380 S.W.3d 181, 188–89 (Tex. Crim. App. 2012) (a driver was not criminally responsible as a party to murder where there was no evidence that the driver assisted or encouraged his passenger to kill a third party following a roadside argument).

During the trial, Hanson testified that he had a "split second" look of the shooter, who appeared to be wearing "a red jacket maybe or red sleeve." Rose, whose testimony suggested that appellant was the shooter, testified on the other hand that appellant was dressed entirely in black. We are not persuaded that Hanson's testimony provides a rational and articulable basis for disregarding Rose's corroborating testimony. Hanson's statement regarding the color of the shooter's clothing was equivocal, and it did not refute Rose's testimony that appellant was in the company of Young, the other suspected attacker. Rose's testimony still had a tendency to connect appellant to the commission of the charged offense.

Moreover, Rose was the *only* witness who identified appellant at trial. Vasquez never confirmed that appellant was the backseat passenger in his car, nor did he testify that he assisted appellant as either a principal or a party to the offense. Without testimony of that sort, Vasquez was unlike the typical accomplice witness whose testimony directly incriminates the accused. Indeed, even if there were no accomplice-witness rule, a conviction could not have been had on Vasquez's testimony alone. Rose was essential to the prosecution because he

placed appellant at the scene with the other suspected attacker, and he was the only witness who could explain the figures on the grainy surveillance footage.

The jury was apparently persuaded by the strength of Rose's testimony. Having considered the strength of that testimony ourselves and the relative weakness of Vasquez's status as an accomplice, we conclude that if an accomplice-witness instruction had been given, then the jury would have certainly found that Vasquez's testimony was corroborated. Any error in omitting the instruction was therefore harmless. *See Casanova*, 383 S.W.3d at 539–40.

## FELONY MURDER

In his next issue, appellant argues that the trial court abused its discretion by refusing to instruct the jury on the lesser-included offense of felony murder.

We apply a two-part test when determining whether a defendant is entitled to an instruction on a lesser-included offense. *See Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). We first consider whether the lesser-included offense is included within the proof necessary to establish the charged offense. *See McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). This inquiry requires that we compare the elements of the greater offense as pleaded in the indictment with the statutory elements of the lesser offense. *See Ex parte Amador*, 326 S.W.3d 202, 206 n.5 (Tex. Crim. App. 2010). If the elements of the lesser offense cannot be established by proof of the same or less than all of the facts required to establish the commission of the greater offense, then the lesser offense is not a lesser-included offense, and our analysis ends there. *See Hall v. State*, 225 S.W.3d 524, 536–37 (Tex. Crim. App. 2007).

If the lesser offense is actually a lesser-included offense, then we examine whether there is some evidence from which a rational jury could acquit the

defendant of the charged offense but convict him of the lesser offense. *See Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). The evidence must establish the lesser offense as "a valid rational alternative to the charged offense." *See Segundo v. State*, 270 S.W.3d 79, 90–91 (Tex. Crim. App. 2008). We consider all of the evidence presented at trial, regardless of its credibility or whether it is produced by the State or the defendant. *See Hayward v. State*, 158 S.W.3d 476, 478–79 (Tex. Crim. App. 2005); *Thompson v. State*, 521 S.W.2d 621, 624 (Tex. Crim. App. 1974).

A person commits a capital murder if he intentionally commits a murder in the course of committing or attempting to commit a felony. *See* Tex. Penal Code § 19.03(a)(2). A person commits a felony murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. *Id.* § 19.02(b)(3). The only distinguishing element between these two offense is the intent to kill: capital murder requires an intentional killing, whereas felony murder does not. *See Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). Because an offense may be a lesser-included offense if the only difference from the offense charged is that a less culpable mental state suffices to establish its commission, we conclude that felony murder is a lesser-included offense of capital murder. *See* Tex. Code Crim. Proc. art. 37.09(3); *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004). Therefore, the first part of the test is satisfied.

Turning to the second part of the test, we must now consider whether there is any affirmative evidence from which a rational jury could have found that appellant had the intent to commit a robbery, but not the intent to cause the death of his victim. *See Fuentes v. State*, 991 S.W.2d 267, 272–73 (Tex. Crim. App.

14

1999). Contending that the record contains such evidence, appellant refers to testimony that Amaro was fighting with the robbers in the moments before he was shot. Appellant opines that, during the fight, there may have been a struggle over the gun, causing the gun to accidentally discharge.

Appellant's argument relies entirely on conjecture, which is insufficient to support the submission of a lesser-included offense instruction. *See Wortham v. State*, 412 S.W.3d 552, 558 (Tex. Crim. App. 2013) (holding that a defendant is not entitled to a lesser-included offense if the only evidence offered in support of the lesser charge is "mere speculation"); *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ("Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented."). There must be *affirmative evidence* showing that appellant did not intend to murder Amaro at the time the gun was fired. *Compare Ross v. State*, 861 S.W.2d 870, 872, 877 (Tex. Crim. App. 1992) (op. on reh'g) (holding that a defendant was entitled to an instruction on felony murder as a lesser-included offense of capital murder where the defendant affirmatively stated in his confession that his gun went off when he shoved his robbery victim), *with Gonzalez v. State*, 296 S.W.3d 620, 626–27 (Tex. App.—El Paso 2009, pet. ref'd) (holding that a "possibility" of an accidental discharge would not support an instruction on felony murder, without affirmative evidence showing that the shooting was unintentional). Appellant has not cited to any affirmative evidence in his brief.

The record reflects that Flores and Martinez were the only two individuals who witnessed the shooting, but neither of them testified at trial. Instead, they spoke with a sheriff's deputy, who repeated their witness statements to the jury. According the deputy, Flores and Martinez saw Amaro fighting with his attackers in the moments before they shot him. However, there was no testimony, or even a

15

suggestion, that Amaro had been fighting over possession of the gun, or that the gun had accidentally discharged during the struggle. We therefore conclude that there is no basis from which a jury could have rationally found that appellant intended to rob Amaro, but not murder him. *See Adanandus v. State*, 866 S.W.2d 210, 230–31 (Tex. Crim. App. 1993) (holding that a felony murder charge was not warranted, despite evidence of a struggle between the defendant and the complainant, where there was "no evidence that the parties were at any point struggling over the gun").

Appellant was not entitled to an instruction on the lesser-included offense of felony murder, and the trial court did not abuse its discretion by denying appellant's request for the submission.

## AGGRAVATED ASSAULT

In a related complaint, appellant argues that the trial court abused its discretion by refusing to instruct the jury on the lesser-included offense of aggravated assault. We review this complaint under the same standard as before, considering first whether aggravated assault is actually a lesser-included offense of capital murder, and then whether there is some evidence of probative value that supports the requested instruction.

The Court of Criminal Appeals has recognized that aggravated assault can be a lesser-included offense of capital murder. *See Dowden v. State*, 758 S.W.2d 264, 269 (Tex. Crim. App. 1988); *see also Landry v. State*, 227 S.W.3d 380, 382 (Tex. App.—Texarkana 2007, no pet.). Thus, the first part of the test is satisfied.

To satisfy the second part, there must be some evidence that appellant intended to commit an aggravated assault, but not a murder. *See Dowden*, 758 S.W.2d at 269. This burden is met if the record supports a finding that appellant

16

only intended to cause serious bodily injury, and not death. *See* Tex. Penal Code § 22.02(a) (defining aggravated assault); Tex. Code Crim. Proc. art. 37.09(2) (providing that an offense is a lesser-included offense if it can be established through a lesser showing of injury than the charged offense).

After independently poring through the record, we are not aware of any evidence that would support the submission of an instruction for aggravated assault. Appellant, likewise, has not cited to any evidence showing that, if he were one of the attackers, he only intended to cause serious bodily injury.

Appellant asserts in his brief, however, that "there was no evidence presented at trial to establish that the individual who shot and killed Raul Amaro did so with the specific intent to cause his death." This argument is unpersuasive. It is not enough to argue that there was a lack of evidence to support the greater offense. There must instead be "affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012); *see also Dowden*, 758 S.W.2d at 269 ("A charge on the offense of aggravated assault would be required only if testimony was *introduced* from sources indicating a lack of intent on the part of appellant to kill the deceased." (emphasis added)). Even if appellant could show that there was no evidence of an intent to kill—and he cannot, for the reasons explained above—there is still no affirmative evidence from which a jury could rationally conclude that appellant was guilty of only aggravated assault.

The trial court did not abuse its discretion by refusing to submit an instruction on the lesser-included offense of aggravated assault.

# CLOSING STATEMENTS

The prosecutor made the following comments in her final summation: "Please, please, go back there. Do the right thing. Show the Amaro family that there is justice in our country. Show them that we are willing to do the right thing." Appellant objected to these remarks as being outside the scope of permissible closing statements. The trial court overruled the objection, and on appeal, appellant contends that the trial court's ruling was erroneous.

Permissible closing statements generally fall within one of four areas: (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to argument of opposing counsel, or (4) a plea for law enforcement. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). A closing statement that exceeds these bounds is improper, and the trial court commits error when it (1) overrules an objection to the statement, (2) refuses an instruction to disregard the statement after sustaining an objection to the statement, or (3) fails to grant a mistrial necessitated because of the statement. *See Watts v. State*, 371 S.W.3d 448, 457 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Appellant contends that the prosecutor encouraged the jurors "to place themselves in the shoes of the victim's family," and that her closing statement was therefore improper. We disagree. The prosecutor did not ask the jurors to render a verdict based on what the Amaro family desired. Instead, she urged them to convict appellant because the evidence supported a verdict of guilty. The prosecutor's closing statement qualified as a plea for law enforcement, and the trial court did not abuse its discretion by overruling the objection. *Cf. Ayala v. State*, 267 S.W.3d 428, 435–36 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (closing statement was a proper plea for law enforcement when the prosecutor said, "I hope you also think of Carmen, and her children, and Juan, and the justice

they're entitled to. . . . And on this day, when you're in the 12 seats, I ask you to deliver them that justice. . . . Convict that man of the offense that he deserves to be convicted of, capital murder. There's nothing, nothing else that is fair and right in this case."); *Smith v. State*, 846 S.W.2d 515, 517–18 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (closing statement was a proper plea for law enforcement when the prosecutor encouraged the jury to "do the right thing" before invoking concerns about crime on the streets and the impact of that crime on members of the community).

## CONCLUSION

Appellant's five issues are overruled and the judgment of the trial court is affirmed.


/s/    Tracy Christopher
           Justice


Panel consists of Justices Christopher, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).