

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00038-CR
_____


BRIAN CLAY EARLE, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 402nd District Court
Wood County, Texas
Trial Court No. 23,530-2018


Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

When William Moore was digging post-holes to set corners on his newly purchased one-acre tract of land in Wood County, he was confronted by Brian Clay Earle, who claimed the property was his. Since Earle was carrying an AK-47 semi-automatic rifle and had threatened to shoot him, Moore took his auger and exited the property. When they returned to their vehicles, Earle emphasized his threat by discharging a round from his rifle, which hit the ground a few feet to Moore's right. As a result, a jury convicted Earle of felony deadly conduct[1] and assessed him two years' imprisonment and a $10,000.00 fine. Based on the jury's verdict and recommendation, the trial court sentenced Earle to two years' imprisonment and assessed him a $10,000.00 fine, suspended both the sentence and fine, and placed him on two years' community supervision.

In this appeal, Earle asserts the trial court erred in failing to include a lesser-included-offense instruction on misdemeanor deadly conduct in the jury charge. Because we find no error by the trial court, we affirm the trial court's judgment.

## I.    Background

As relevant to Earle's sole issue on appeal, Moore testified that, on or about November 3, 2017, he had surveyed and staked a one-acre tract of land in Yantis that he had recently purchased. The surveyors placed flags at the corners of the property where they found stones and markers. That afternoon, Moore drilled post-holes with his power auger at each of the corners. As he was drilling the last hole, Earle came walking up carrying an AK-47 and yelling

---

[1]See TEX. PENAL CODE ANN. § 22.05(b)(1).

profanity and told him, "Get off my land.[2]  I'm going to shoot you."  Moore told Earle that he had just purchased the property and that he had the papers in his truck.  Earle refused to listen and said that he had chased off two other people that he had threatened to shoot.  He then told Moore that he would shoot him if he did not get off the property.  Moore got his auger and began to climb through the fence to return to his truck.

Once through the fence, Moore returned to his truck and stood behind it facing Earle.  He told Earle that, if Earle had papers showing that the property was his, then Moore would work it out with his seller.  Earle responded that he did not need papers.  Moore then offered to give him copies of his papers, to which Earle responded that they were lies and that he did not want to see them.  Earle then turned and started walking to his vehicle, and Moore asked him his name so he would know who to contact.  Earle said, "Clay Earle," then turned around, swung his rifle across Moore's path, and discharged the rifle, with the projectile landing in the dirt two to three feet to the right of Moore.  Moore testified that the shot went downward, traveled eight to ten feet, and made a puff of dirt next to him.  At the time, Earle was about eight to ten feet away from Moore.  One of the men who was with Earle then said, "The police are here," and Earle went to his vehicle.

Wood County Sheriff's Deputy Heather Bailey came to the scene and talked with both Moore and Earl.  She testified that, after she learned from Moore that a weapon had been discharged, she talked with Earle, who told her that he did have a firearm and that he had discharged it.  She acknowledged on cross-examination that Earle said he fired a warning shot

---

[2]The evidence showed that Earle's mother, Linda, owned a 104-acre tract that was contiguous to Moore's one-acre tract and that the fence enclosing the 104-acre tract also enclosed the one-acre tract, with no fence separating them.

and that her report said that Earle told her, "I fired my gun into the ground, because I asked him to leave and he wouldn't leave."

A recording from Bailey's body camera was also played for the jury. On the recording, Moore can be heard telling Bailey that Earle discharged a gun at his feet. Earle denied that he fired at Moore's feet and stated that he fired into the ground. He said that he fired a warning shot for Moore to leave.

Earle and his witnesses gave a different account of the events that day. Logan Hobbs testified that he had accompanied Earle's son, Shawn, to tend to his farm animals when they saw a pickup truck parked in the ditch. They called Earle, who showed up with an AK-47 and went across the fence to confront Moore. Hobbs testified that Earle carried the rifle along his leg, pointed to the ground. After a verbal confrontation, Earle reached down, "jacked" a shell out of the weapon, and fired it at the ground to Earle's right into the dirt.

Shawn testified that, when Earle confronted Moore, Moore walked away, leaned his auger against the fence, then turned around and started arguing again. He testified that Earle then fired one round into the ground to the right, and the argument stopped.

Earle testified that, when he saw Moore drilling holes on the property, he crawled through the fence and walked to him. He said he carried his gun by its pistol grip on his right side. He denied that he pointed the gun at Moore. Then he testified:

> Q. Okay. And what happens after that -- you guys are having this conversation, this -- and I call it a "conversation." I know your voices were raised. All right? I'm not --
> You were being loud; he was being loud, right?
>
> A. Yes.

4

Q.      Is that fair to say?

A.      Yeah.

Q.      Okay.  What does he do or what -- what happens next?

A.      Okay.  He stopped arguing with me and picked his auger up and started walking, like he was going to leave.  And then he stopped -- put the auger against the fence and stopped, and started arguing with me again, saying that he bought it -- . . . -- and it was his.
        And I said, "You couldn't have bought it, because we hadn't sold nothing."

Q.      Okay.

A.      And that's when I reached down with my left hand and put a bullet in the gun and went to the right and fired it.

        . . . .

Q.      Why did you fire the weapon?

A.      I was just making a loud noise, hoping that he would leave.  I wanted him to leave.

Q.      Did you ever have any intention to hurt Mr. Moore?

A.      No.

Q.      Did you ever have any intention to shoot at or in Mr. Moore's direction?

A.      No.

Q.      And you -- you show us how you -- you reached across yourself -- you say -- was there not a -- not a -- a bullet in the chamber?

A.      No, there was not a bullet in the chamber.

5

> Q.    Okay. So it had to be actually cocked --
>
> A.    I had to actually breech one in.

He also testified that he held the weapon by his right side the whole time, that he reached down and breeched a bullet in, took it to his right, and fired it into the ground.

Earle was indicted for felony deadly conduct. *See* TEX. PENAL CODE ANN. § 22.05(b)(1). Based on his and his witnesses' testimony, Earle requested the trial court to submit an instruction in the jury charge for misdemeanor deadly conduct, which he contended was a lesser-included offense. *See* TEX. PENAL CODE ANN. § 22.05(a).

## II.    Standard of Review

"We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

"Our review of whether an instruction on a lesser-included offense should be given also involves a two-step determination." *Shepherd v. State*, 489 S.W.3d 559, 575–76 (Tex. App.—Texarkana 2016, pet. ref'd) (citing *Cavazos v. State*, 382 S.W.3d 377, 382–83 (Tex. Crim. App. 2012); *Feldman v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); *Carson v. State*, 422 S.W.3d 733, 746 (Tex. App.—Texarkana 2013, pet. ref'd)). "First, we determine whether 'the proof necessary to establish the charged offense also includes the lesser offense.'" *Id.* at 576

6

(quoting *Cavazos*, 382 S.W.3d at 382 (citing *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007); *Feldman*, 71 S.W.3d at 750; *Carson*, 422 S.W.3d at 746)). "If it does, then we determine 'whether there is some evidence that would permit a rational jury to find that, if the [defendant] is guilty, he is guilty only of the lesser offense.'" *Id.* (alteration in original) (quoting *Cavazos*, 382 S.W.3d at 383 (citing *Hall*, 225 S.W.3d at 536); *Feldman*, 71 S.W.3d at 750; *Carson*, 422 S.W.3d at 746). "This second inquiry is a fact question based on the evidence admitted at trial and requires that there be some evidence that would allow a rational jury to acquit the defendant of the greater charge and convict him of the lesser-included offense." *Id.* (citing *Cavazos*, 382 S.W.3d at 383; *Feldman*, 71 S.W.3d at 750–51). "The instruction must be given if there is evidence from any source, regardless of whether it is weak, impeached, or contradicted, that raises a fact issue of whether he is guilty *only* of the lesser offense." *Id.* (citing *Cavazos*, 382 S.W.3d at 383; *Carson*, 422 S.W.3d at 746). "To determine whether there is some evidence raising an issue, we consider it in the context of the entire record." *Id.* (citing *Carson*, 422 S.W.3d at 746–47; *Cavazos*, 382 S.W.3d at 384–85).

In his brief, Earle asserts that the elements of misdemeanor deadly conduct are included within the felony charge for deadly conduct,[3] cites the elements of both, but provides no analysis of how he reached that conclusion.[4] The State conducts a cognate pleadings analysis and

---

[3]The indictment in this case alleged that Earle "did then and there knowingly discharge a firearm at or in the direction of an individual, namely, William Moore."

[4]In *Safian v. State*, the Court of Criminal Appeals explained the first step of the analysis:

> In conducting the first step of the analysis, we "compare the elements of the greater offense as pled to the statutory elements of the potential lesser-included offense in the abstract." *See Ex parte Castillo*, 469 S.W.3d 165, 169 (Tex. Crim. App. 2015) (citing *Hall*, 225 S.W.3d at 531, 535). "[W]hen the greater offense may be committed in more than one manner, the manner

7

concludes that misdemeanor deadly conduct is not a lesser-included offense of the offense charged in the indictment. *See Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). However, the State does not perform a functional-equivalence analysis "to determine whether elements of the lesser offense are functionally the same or less than those required to prove the charged offense." *Safian*, 543 S.W.3d at 220 (citing *Cavazos*, 382 S.W.3d at 384).

Nevertheless, we need not determine whether misdemeanor deadly conduct is a lesser-included offense under the State's indictment, because we find that, under the record in this case, there is no evidence that would permit a rational jury to find that, if Earle is guilty, he is guilty only of misdemeanor deadly conduct. *See Cavazos*, 382 S.W.3d at 384.

## III.    Analysis

To obtain a conviction for felony deadly conduct, the State was required to show beyond a reasonable doubt that Earle (1) knowingly (2) discharged a weapon (3) at or in the direction of Moore. *See* TEX. PENAL CODE ANN. § 22.05(b)(1). Misdemeanor deadly conduct requires a

---

alleged will determine the availability of lesser-included offenses." *Hall*, 225 S.W.3d at 531. "An offense is a lesser-included offense of another offense . . . if the indictment for the greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g). "[T]he elements of the lesser-included offense do not have to be pleaded in the indictment if they can be deduced from facts alleged in the indictment." *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013). When there are allegations in the indictment that are not identical to the elements of the lesser offense, a court should apply the functional-equivalence test to determine whether elements of the lesser offense are functionally the same or less than those required to prove the charged offense. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012). An element of the lesser-included offense is functionally equivalent to an allegation in the charged greater offense if the statutory elements of the lesser offense can be deduced from the elements and descriptive averments in the indictment for the charged greater offense. *McKithan v. State*, 324 S.W.3d 582, 588–89 (Tex. Crim. App. 2010).

543 S.W.3d 216, 220 (Tex. Crim. App. 2018).

8

showing that Earle (1) recklessly (2) engaged in conduct (3) that placed Moore (4) in imminent danger (5) of serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.05(a).

"Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another." TEX. PENAL CODE ANN. § 22.05(c). However, this statutory presumption "is not an element of [the] offense because it is not part of the statutory definition of the crime." *Guzman v. State*, 188 S.W.3d 185, 193 (Tex. Crim. App. 2006). Since "[i]t 'is not evidence nor does it "supply" evidence,'" it "play[s] no part in determining whether a defendant is entitled to a lesser-included offense instruction." *Id.* (quoting *Green v. State*, 893 S.W.2d 536, 545 (Tex. Crim. App. 1995) (Clinton, J., dissenting)).

Earle argues that the only difference between felony deadly conduct and misdemeanor conduct is the mens rea: the felony requires knowingly discharging a weapon, and the misdemeanor only requires recklessly engaging in conduct, which in this case was discharging a weapon. He argues that, since there was disputed testimony regarding whether he discharged the weapon at or in the direction of Moore or discharged it to his side, then a jury could have found that he acted recklessly rather than knowingly. Even assuming, without deciding, that the only difference between felony deadly conduct and misdemeanor deadly conduct is the mens rea, we find that there was no evidence that would permit a rational jury to find that Moore was guilty only of the lesser offense. *See Cavazos*, 382 S.W.3d at 383.

"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE

9

ANN. § 6.03(c). When a person's conduct involves discharging a weapon, Texas courts have required some evidence that the discharge was accidental before requiring an instruction on a lesser-included offense with recklessness as the mens rea. *See Cavazos*, 382 S.W.3d at 385–86 (manslaughter[5] instruction not required when no evidence that there was a reckless discharge of the firearm); *Dowden v. State*, 758 S.W.2d 264, 271 (Tex. Crim. App. 1988) (no instruction on manslaughter when no evidence of accidental discharge); *Hayes v. State*, 728 S.W.2d 804, 810 (Tex. Crim. App. 1984) (testimony that discharge during struggle with victim was accidental required instruction on misdemeanor reckless conduct (now called deadly conduct)); *Arnold v. State*, 234 S.W.3d 664, 672–73 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (manslaughter instruction not required when no evidence of accidental discharge); *Johnson v. State*, 915 S.W.2d 653, 659–60 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (misdemeanor reckless conduct instruction not required when no evidence weapon accidentally discharged).

In this case, there was no evidence that Earle accidentally discharged his rifle. Moore testified that Earle swept across his path with the rifle, then shot a projectile in the ground next to him. Hobbs testified that Earle jacked a shell out of the rifle, then fired it into the ground. Earle told Bailey that he fired his gun into the ground, because he asked Moore to leave, and that he fired a warning shot to get Moore to leave. Earle affirmatively testified that he breeched a bullet into the chamber, then fired it into the ground. Thus, all of the testimony shows that Earle knowingly discharged the weapon. Consequently, there was no evidence that would permit a rational jury to find that Earle recklessly discharged the weapon. *See Cavazos*, 382 S.W.3d at

---

[5]*See* TEX. PENAL CODE ANN. § 19.04(a) ("A person commits [manslaughter] if he recklessly causes the death of an individual.").

10

385–86.  Therefore, we find that the trial court did not err in refusing to submit an instruction on misdemeanor deadly conduct.  We overrule Earle's sole issue.

## IV.    Disposition

Having determined that the trial court did not err in refusing the requested instruction, we affirm the trial court's judgment.


                                                    Ralph K. Burgess
                                                    Justice


Date Submitted:        October 16, 2020
Date Decided:          November 18, 2020

Do Not Publish